200 So. 739

**HOLCOMBE, Sheriff, v. STATE ex rel. CHANDLER et al.**

**1 Div. 131.**

Supreme Court of Alabama.

Feb. 27, 1941.

Wm. V. McDermott, of Mobile, for appellant.

592

T. E. Twitty, T. K. Jackson, Jr., and Armbrecht, Inge, Twitty & Jackson, all of Mobile, for appellee.

THOMAS, Justice.

The petition was for mandamus and the awarding of that writ as prayed is assigned and challenged by the appeal.

This is a suit begun as a petition for writ of mandamus in the name of the state on the relation of appellee R. B. Chandler, as publisher of the newspaper, Mobile Register, and affiliated newspapers in the City of Mobile, and other named individuals holding positions with said newspaper published by Mr. Chandler, directed against the appellant Holcombe, as Sheriff of Mobile County, Alabama.

The petition sought to compel the appellant to permit the relators, or persons duly designated by them, to inspect the volumes and books containing records of each prisoner received into the Mobile County Jail for the period beginning January 1, 1940, to and including the date of the completion of such inspection. It alleged that by virtue of Section 10198 of the Code of

Alabama, appellant is required to keep in his office and subject to the inspection of the public during office hours, a well-bound book, in which must be entered a description of each prisoner received into the county jail, showing the name, age, sex, color and any other distinguishing marks, together with the charge for which such prisoner is held, the order and date of commitment and the order and date of release. By way of information and belief, it is alleged by relators that appellant did then, and at all times mentioned and covered by their petition, keep such book or books to which an inspection in the form of a written demand was made by relators of appellant. The nature and form thereof is exhibited. Relators allege defendants refused to comply with the demand, and that as residents, citizens, taxpayers, qualified electors, and as individuals engaged in publishing said Mobile Register and affiliated newspapers, they are legally entitled to make a due inspection of said books and make copies thereof, or memoranda therefrom.

It is urged by appellant that the written demand for inspection which was refused is in effect at variance from what is sought in the petition for mandamus.

The demand also stated: "All citizens and taxpayers of Mobile County have a direct interest in such matters. See Code Sections 10198, 10196 and 2696."

The demand called the sheriff's attention to Section 10198 of the Code, which reads as follows: "The sheriff must keep, in his office and subject to the inspection of the public during office hours, a well bound book, to be procured at the expense of the county, in which he must enter a description of each prisoner received into the county jail, showing the name, age, sex, color, and any other distinguishing marks, together with the charge for which such prisoner is held, the order and date of commitment, and the order and date of release."

The demand for inspection indicated that the sheriff had stated that under Section 8690 of the Code, it is a criminal offense for that official to disclose the fact of indictment found before the arrest of a defendant or before bail has been given for his appearance. To this the relators responded that in any event it is not "our purpose that you disclose any records as to any case coming within the provisions of Section 8690; we merely ask and for-

mally demand that under Section 10198 of the Code of Alabama, we be permitted to see the records pertaining to the arrests by the Sheriff's Department." ·

The demand sought the inspection of records descriptive of prisoners in Mobile County Jail from January 1, 1940, to the date of the completion of the inspection, and pointed out that it was not the purpose of the relators to disrupt the functioning of the sheriff's office, but that one of the relators would appear at his office at a certain time to begin the inspection of the first volume dealing with said period, if it was not in use, and after the inspection of that volume had been completed, one of the relators, or an agent or representative of relator, would begin the inspection of the second volume, and so on, until the inspection had been completed.

Issuance of the writ was waived; and to the petition appellant filed a demurrer, assigning several grounds, viz: (1) that the facts averred did not show a clear legal right to the thing demanded; (2) that no legal demand had been made which was illegally refused; (3) that no direct interest appeared in support of the general inspection demand; (4) that the demand as made was vague, indefinite and uncertain; (5) that the demand should be confined to an inspection of pertinent or specific records in one or a given number of particular cases; (6) that the alleged right to make such inspection is but the conclusion of the pleader; and (7) that "the records described in Code Section 10198 are no longer required to be kept following the installation of a uniform system under the Uniform System of Accounting Act and that because of the installation of a uniform record system under said Act, the record book now required to be kept by appellant with the information referred to in Code Section 10198 also contain data which should not be made available to the relators or to the public generally because they might, and do in fact in certain instances, contain information which should be inspected only by duly appointed and authorized officers of the State or County."

The demurrers being overruled, appellant filed answer to the effect to be stated, as follows: that appellant does keep in his office, in the manner and on the form prescribed and directed under the authority of the Uniform System of Accounting Act, the books and record forms in which are entered, among other things, the name, age,

594

etc., of each prisoner admitted to the Mobile County Jail; that a true copy of such record form, as so prescribed under said Uniform System of Accounting Act, is attached to appellant's answer as Exhibit "A". Then the answer proceeds on the assumption that certain entries required to be made on said record form, which in some instances make it apparent the case record should not be open to the inspection of relators or the public generally, such as the grand jury case, number and names of witnesses appearing before the grand jury in a case where the party under investigation is not in custody, and may not have been arrested prior thereto; where a person not previously arrested has been indicted but not yet taken into custody under a capias, "Because of the state of the books containing such records,—of persons who are not yet prisoners and of persons who will never be prisoners." Appellees' contention that the certain records should be made available to relators or the public generally was upheld by the court. Appellant stated in his answer that he had not refused to give to relators any information in, nor had he refused to permit an inspection by the relators of, a certain one. or any given number of specified cases therein to which they were lawfully entitled; that, on the contrary, petitioners had the free and unrestrained access to all such books and the case records therein that appeared to have been demanded by relators and inspection thereof sought by mandamus.

To this answer of appellant, relators filed a sworn replication, admitting that appellant kept in his office the records in form of Exhibit "A", averring it was his duty to permit them to inspect the same, as to each prisoner admitted to jail, admitting it would be unlawful for appellant to permit inspection of records in certain instances described in appellant's answer, but averring their demand did not have reference to such cases; and averring that the records in said Exhibit "A" were loose-leaf forms kept in detachable volumes or binders and that there is no provision of law requiring him to place records of cases in which there is or will be no arrest in the same binder or volume with records of persons arrested, and they denied that appellant so kept such records in the same binders. Relators' replication further averred it was the duty of appellant to perform both duties, that is, not to disclose information pertaining to an indicted but un-arrested person, or proceedings before the grand jury relative to an unindicted person, but that he must disclose his records concerning prisoners received into the jail. Their replication admitted that appellant keeps the Daily Jail Report record or "blotter" in form Exhibit "B", but deny that such Exhibit "B" contains the data referred to in Code Section 10198 with reference to the order and date of the release of prisoners received into said jail.

It is further averred by relators that said Exhibit "B" consists merely of sheets of paper, and not of any well-bound book, and that it *is not kept in appellant's office but by the jailer by whom at the end of each day the same is removed and placed in an envelope file,* and that the records of each day's admitted prisoners being kept separate. These records, relators aver, they do not know are kept by appellant and available for their inspection. Their replication further averred that, although appellant admitted receipt of their written demand, appellant does not show he has ever complied with same and because thereof said demand must be considered in law as refused.

There is a bill of exceptions indicating that Mr. Cox testified in behalf of relators and included as a part of his testimony the reply of appellant to the written demand for inspection, which said reply was in effect a denial of the right of inspection by the sheriff to relators, publishers.

The material evidence as to how the sheriff's books are kept is found in the oral testimony of Miss Kathryne Farmer, which will be later indicated.

We are of opinion and hold that relators had the right, under the statute and their pleadings, to obtain their demand for inspection, and that said demand was not vague or indefinite, but specific. This will indicate that our holding is that the insistences of respondent-appellant are not well taken under the authorities now to be stated, which support this finding.

The authorities are well established in this jurisdiction that one entitled to mandamus must show a clear right to demand the performance of a legal duty by one who is so required to perform such act. Folmar v. Brantley et al., 238 Ala. 681, 193 So. 122; Ex parte Taylor, 236 Ala. 219, 181 So. 760; State ex rel. Towle v. Stone, County Treasurer, 236 Ala. 82, 181 So. 281.

There are decisions to the effect that it is not an unqualified right of everyone to demand and be accorded the· right of inspection of books or documents in public offices, but that any one desiring the right of inspection can be required to show that he has a direct interest in the ·document sought to be inspected and the inspection was for legitimate or proper purposes. Brewer v. Watson, 71 Ala. 299, 46 Am.Rep. 318; Phelan v. State ex rel. Rosenstok, 76 Ala. 49.

It is the insistence of appellant that the demand for a general inspection of said records in the sheriff's office may be made by one or a group of persons; that it should be treated in the light that many persons so interested might claim it at the same time and fill the rooms· of the sheriff with "encumbering copyists having no connection with the office, nor with its official duties." Phelan v. State ex rel. Rosenstock, supra; Randolph v. State ex rel. Collier et al., 82 Ala. 527, 2 So. 714, 60 Am. Rep. 761.

 In Excise Commission of Citronelle v. State ex rel. Skinner, 179 Ala. 654, 60 So. 812, 813, it is said:

"With respect to records other than judicial, no statute to the contrary intervening, the public generally have no absolute right of access or inspection. And one who demands that right can be properly required to show that he has an interest in the document which is sought, and that the inspection is for a legitimate purpose. But, for the public and for individuals showing such a right, the custodian of official documents is a trustee; and, while he may and should preserve them against impertinent intrusion, he should allow ready access to those who have an interest in them, and who claim access for the purpose of promoting or protecting it. Brewer v. Watson, 61 Ala. 310. * * *

"It is, however, perfectly clear to our minds that, if the document may furnish evidence or information relative to any action or proceeding which he is qualified to bring, or which he may be called upon to defend, whether actually pending or not, he is entitled to such inspection. Ferry v. Williams, 41 N.J.L. 332, 32 Am.Rep. 219; In re Caswell, 18 R.I. 835, 29 A. 259, 27 L.R.A. 82, 84, 49 Am.St.Rep. 814; Brewer v. Watson, 61 Ala. [310] 311. And 'it is not necessary that the interest be private, capable of sustaining a suit or defense on the personal behalf of the party desiring the inspection; *but he has the right of inspection whenever, by reason of his relation to the common interest, he may act in such a suit as the representative of a common or* public. right. * * *'" (Italics supplied.)

This case sustains petitioners' right to a due inspection of the sheriff's books as to the matters embraced in Section 10198 of the Code of 1923.

Such are the principles of law announced in the foregoing cited and important cases in this jurisdiction.

Under the pleading and evidence before us the reporter will set out exhibits "A" and "B".

Exhibit "A" shows that it is the form of record kept of a *prisoner* and not of a person who is not under arrest. If indictment is returned against one in jail or under bond, no confidential information, as indicated by statute, is given by the entry in the form exhibited or could be secured by inspection of same. Code, § 8690. The name of one under indictment by the grand jury and not under arrest is not required to be entered by the statute or by this form. An erroneous entry by the sheriff or jailor of information that may not be disclosed to the public under the statute would not invalidate the record itself, but might subject the sheriff or jailor to penalties of the law for an undue disclosure of secret information. The form of record, indicated by the Exhibit "A", was a substantial compliance with the requirements of the statute (Code of 1923, § 10198) and such record was subject to a due inspection by one having a recognized interest in the same and authorized to make inspection. Excise Commission of Citronelle v. State, ex rel. Skinner, supra.

The decisions relevant to what is a well-bound book required to be kept under such statutes are not numerous. See Miller v. Estabrook, 4 Cir., 273 F. 143; People v. Haas, 311 Ill. 164, 142 N.E. 549. In Richardson et al. v. Woolard, Chancery Clerk, 133 Miss. 417, 97 So. 808, the court held that a loose-leaf ledger is now well understood and is defined as a well-bound book required to be kept by the statute.

The record discloses the nature of the well-bound book in which Exhibit "A", with its contents, is entered. The testimony of Miss Kathryne Farmer, called on behalf of the defendant, is to the effect that:

596

"On cross-examination the witness testified as follows:

·"This Exhibit 'B', jail blotter form, does not contain the order and date of the release of the prisoner except .in the instance when he is released on the same day that he is taken into the jail; on the other hand, this Exhibit 'A' form contains the name, age, sex, color of each prisoner, together with the charge made against the prisoner, the order and date of commitment and the order and date of release of the prisoner. As to Exhibit 'A' form being in a well bound book, I don't know whether it is a well bound book or not; I don't know whether a loose leaf book is considered a well bound book or not, but it is a loose leaf system that has a binder on each side and certain mechanical gadgets you can screw and unscrew and take apart, and on this form, Exhibit 'A' the information concerning the arrest of prisoners, the information required to be kept by this Code Section 10198, is kept by the Sheriff, the defendant in this case, in one of the books.

"On re-direct examination this witness testified as follows:

"Now the book that he was referring to as Exhibit 'A', that is the book required of the sheriff's office to be kept by Mr. Singleton, fixed under the uniform system of accounting, and in addition to the information the gentleman asked about, on those sheets we put every paper of any kind and every arrest and everything that pertains to all criminal work in the sheriff's office relative to grand jury subpoenas and writs of arrests and everything on that sheet; that book contains information on this form relative to grand jury investigations, where there is no prisoner arrested and there are occasions when the book contains information relative to prisoners under indictment who are not yet arrested.

"On examination by the Court this witness testified as follows:

\* \* \* \* \* \*

"Q. Which I take it that all parties present admit is well bound book, I think, and this jail docket (indicating the book in which defendant's records on Form Exhibit A are kept) also shows the name of the person, the color, sex, age, and offense and the time placed in the jail and the date released on bond or what was finally done with the prisoner? A. Yes Sir.

"The witness continued:

"What was finally done with every prisoner shown on Exhibit 'B' is shown on this Exhibit 'A' and my further testimony is that this well bound book (indicating the book in which defendant's records on Form Exhibit A are kept) also contains matter that is not germane to this Exhibit 'B', and information that the Sheriff is working on and in which no person has been arrested."

There is slight analogy in the decisions as to books of account under our statutes in Shepherd·v. Butcher Tool & Hardware Co., 198 Ala. 275, 73 So. 498, wherein it was declared that, "An original leaf from the loose-leaf ledger book of the plaintiff is admissible as evidence under § · 4003, Code 1907 [now § 7701, Code of 1923]." (Italics supplied.) See, also, Fries v. Acme White Lead & Color Works, 201 Ala. 613, 79 So. 45; Loveman, Joseph & Loeb v. McQueen, 203 Ala. 280, 284, 82 So. 530.

■ The question recurs, did the sheriff comply with the provisions of Section 10198 of the Code, by keeping his records in a loose-leaf book rather than in a book in which the leaves are fixed and not subject to detachment or removal? This court takes judicial knowledge of the fact that loose-leaf ledgers are largely used in the business and official conduct of all or many large business and office, to facilitate bookkeeping, and that the judgment entries of this court are entered in such a loose-leaf book, ledger or docket.

■ ·The General Acts of 1935, p. 43, impose the duty upon the State Comptroller, with approval of the State Auditor and the Chief Examiner of Accounts, to reasonably require the keeping of account book records and reports and other blank forms necessary in a uniform system of accounting and reporting for county officers. The provisions of such act, however, did not render nugatory or modify the provisions of. and for the official discharge of. duty as contained in Section 10198 of the Code.

The item on the form ·of "Jail Docket" prescribed by the "Uniform System of Accounting," under the Act of 1935, supra, and the specific entry "Date indict-· ment· returned by Grand Jury," does not disclose information forbidden by law (Code, § 8690) if the defendant is not merely "before the Grand Jury", but is in jail. If not in jail, then no entry is re-

quired to be made as to such defendant not under indictment, not under arrest and not under bond. All entries required by the form are under the items "Name of Prisoner," etc., all. as contained on Exhibit "A", now before the court for inspection.

■ At the risk of repetition and to avoid uncertainty, we conclude by saying this court holds: (1) that the public generally have the right of a reasonable and free examination of public records required by law to be kept by public officials, except in instances where the purpose is purely speculative or from idle curiosity, or such as to unduly interfere or hinder the discharge of the duties of such officer.

In Randolph v. State ex rel. Collier, etc., 82 Ala. 527, 2 So. 714, 715, 60 Am.Rep. 761, this court said:

"Questions similar to the one before us have been heretofore considered by this court. Brewer v. Watson, 71 Ala. 299 [46 Am.Rep. 318]; Phelan v. State [ex rel.], 76 Ala. 49. We said: 'It is not the unqualified right of every citizen to demand access to and inspection of the books or documents of a public office, though they are the property of the public, and preserved for public uses and purposes. * * And the individual who claims access to the public records and documents * * * can properly be required to show that he has an interest in the document which is sought, and that the inspection is for a legitimate purpose.' Speaking, in another place, of the right of inspection, we said: 'The qualification of the rule is that no person can demand the right, save those who have an interest in the record, their lawful agents or attorneys. * * * Whether the right extends beyond the mere right of looking at the record, we have found no adjudged case that determines. It would seem, however, that no reasonable argument can be urged why persons having an interest in the particular tract or tracts should be denied the privilege of making or having made memoranda for his own use.' * * *

"We must not, however, be understood as intending to abridge the right, conferred by statute, of 'free examination,' by all persons having an interest, of the records of the probate judge's office. Nor will we confine this right to a mere right to inspect. He may make memoranda or copies, if he will, and to this end may employ an agent or attorney. The limitation is that he must not obstruct the officers in charge in the performance of their official duties, by withholding records from them when needed for the performance of an official function. Nor is this right of examination confined to persons claiming title, or having a present pecuniary interest in the subject-matter. It will embrace all persons interested, presently or prospectively, in the chain of title, or nature of incumbrance, proposed to be investigated. The right of free examination is the rule; and the inhibition of such privilege, when the purpose is speculative, or from idle curiosity, is the exception."

We further hold (2) persons engaged in the publication of newspapers have such an interest in the public records of public officers as to entitle them to a due or reasonable inspection of such public records. The function of the press in gathering information for the public to enable public affairs to be intelligently discussed is of great importance. Public officials as a matter of courtesy may well afford special privileges to representatives of the press and seek its aid in the attention of the public mind by availing themselves of its readiness to disseminate information. The giving of information to the press must necessarily rest on mutual confidence to insure adequate information reaching the public, and in Journal Printing Co. v. McVeity, 33 Ontario Law Reports 166, Mr. Justice Middleton cautions that when this happy relation does not exist and there is an inclination on the other side to be "curt", it will "probably be found that courts can afford no real redress." Many of the practical affairs of life must depend on good taste and good manners rather than on strict definitions of right "emanating from the Courts." This observation applied to the giving of information or items of interest by the officials to the representatives of the press. As to the *right of inspection of public records,* and to which the mandamus was granted, the court said: "The Municipal Act, R.S.O. 1914, ch. 192, sec. 219, provides that any person has the right to inspect the books and documents mentioned in sec. 218, which it is the duty of the clerk to keep, and the minutes and proceedings of any committee of the council, whether the acts of the committee have been adopted or not, and the assessment rolls, voters' lists, etc. By sec. 237, auditors are required to prepare certain statements of receipts and expenditures, and a resident of the munici-

598

pality has the right to inspect these. No doubt, scattered throughout the Municipal Act and other Acts, there are other records and documents which are open to inspection. All these, it is admitted, the newspaper, through its reporters, has a right to inspect. Beyond this, the giving of information rests entirely in the discretion of the municipal authorities."

 The general rule on the subject is stated in 53 Corpus Juris p. 631, as follows: "It has been held that in the absence of a statute the publisher or editor of a newspaper has the right to inspect public records to acquire material for the purposes of his business of selling news, but this right does not extend to the records of a divorce case. Under statutes providing for the inspection of public records the publisher of a newspaper or a reporter *is entitled to inspection for the purposes of his business to the same extent that the right of inspection is given to the public by the statute.*" (Italics supplied.)

The case of Nowack v. Auditor General, 243 Mich. 200, 219 N.W. 749, 750, 60 A. L.R. 1351, was a petition for writ of mandamus brought by the publisher of a newspaper against the Auditor General, seeking to compel the Auditor General to allow the relator to examine records in the auditor's office concerning the expenditure of certain public moneys. Mr. Justice McDonald delivered the opinion for court, and said in part as follows:

"The plaintiff bases his right to inspection on both the common-law rule and statutory grant. In Michigan there is no statute providing for the inspection of state public records. * * *

"In the absence of any statutory grant of inspection, the question in issue must be determined by a consideration of the general common-law principles relative to the right of citizens to inspect public documents and records. If there be any rule of the English common law that denies the public the right of access to public records, it is repugnant to the spirit of our democratic institutions. Ours is a government of the people. * * * In Michigan the people elect by popular vote an auditor general. * * * He is their servant. His official books and records are theirs. Undoubtedly it would be a great surprise to the citizens and taxpayers of Michigan to learn that the law denied them access to their own books, for the purpose of see-ing how their money was being expended and how their business was being conducted. There is no such law and never was either in this country or in England. Mr. Justice Morse was right in saying: 'I do not think that any common law ever obtained in this free government that would deny to the people thereof the right of free access to, and public inspection of, public records.' Burton v. Tuite, 78 Mich. [363] 374, 44 N.W. [282] 285, 7 L.R.A. 73."

In Nowack v. Auditor General, supra, the court further observed: "In order to maintain it, he must show that he has a special interest, not possessed by the citizens generally. Apart from his public interest, his petition shows that he has been hampered and injured in his business by the refusal of the defendant to allow him to inspect the records in his office. This is a special interest. Is it a sufficient interest to entitle him to the aid of this court by writ of mandamus? We think so. He is the manager and editor of a newspaper. It is published and circulated in Michigan. He sells news to the people through the medium of his paper. In a proper and lawful manner, he has a right to publish matters of public interest. The citizens and taxpayers of this state are interested in knowing whether the public business is being properly managed. By denying him access to the public records for the purpose of securing such information, he is deprived of legal rights for which he is entitled to redress by the writ of mandamus. * * *"

A similar case is Bend Publishing Co. v. Haner, 118 Or. 105, 108, 109, 244 P. 868, 869, which is, likewise, a petition for a writ of mandamus by a corporation which published a newspaper, seeking to compel a county clerk to allow inspection of records in his office in order that petitioner might publish information therefrom of news interest to the readers of its paper. The defendant demurred to the petition, taking the position that the statute required him, as clerk, to furnish any person a certified copy of any portion of his records, and no person other than the clerk was entitled to make a copy of the records. The Supreme Court of Oregon, in overruling the demurrer, stated: "In our own jurisdiction, 47 years after the enactment of the statute hereinabove quoted, the Legislative Assembly enacted chapter 98 of the General Laws of Oregon 1909, entitled: 'An act to provide for the free inspection

of all state, county, school, city, and town records or files by all persons; and for the making of abstracts or memoranda therefrom.' It will be observed that the subject of the act expressly declares its purpose to be to provide for the inspection 'of all state' and 'county records.' * * * The term 'all persons' embraces the petitioner, and the purpose of the petitioner is 'lawful.' "

See, also, Kalamazoo Gazette Co. v. Vosburg, 148 Mich. 460, 111 N.W. 1070.

 We further hold, (3) the book kept by the sheriff on forms designated as Exhibit "A" and shown by the evidence in this case to have been kept by him in substantial compliance with the statute is a well-bound book and subject to be inspected by relators at reasonable times and in a proper manner under Section 10198 of the Code of 1923. We do not mean to say if the sheriff failed to keep a well-bound book and kept in lieu thereof a book not in compliance with the strict requirements of the statute, such record would not be open to the same right of inspection as if it were strictly a well-found book; (4) The Uniform Accounting Act of 1935, p. 43, does not repeal or modify the foregoing statute, nor does said act justify refusal by the sheriff to permit of a due inspection as above indicated; and (5) that the last-cited authorities hold that the publisher of a newspaper has such a public interest as will entitle him or his duly accredited representatives to a right of inspection of public records, and on denial the aid of a court by writ of mandamus to compel such public official to allow a reasonable inspection of public records in his charge, in order that the publisher may disseminate correct information therefrom to the public interest thus served.

The several rulings of the circuit court assigned as error are not availing to appellant. It follows from the foregoing that we are of the opinion and hold that the keeping of such a book as is described and shown by Exhibit "A", attached to appellant's answer and as testified to by Miss Farmer, the clerk in the sheriff's office, was a due compliance with Section 10198 of the Code of 1923, and with the Act of 1935, p. 43, and that mandamus will issue to compel inspection thereof by the several petitioners at reasonable times, not to interfere with the discharge of the required duties of the sheriff in fulfilling his obligations of office.

It follows, therefore, that the judgment of the circuit court should be and it is hereby affirmed.

Affirmed.

GARDNER, C. J., and BOULDIN, BROWN, FOSTER, and LIVINGSTON, JJ., concur.

KNIGHT, J., not sitting.