The Alabama Medicaid Agency (Agency) terminated Mary Primo's eligibility for medicaid benefits in December 1988. She requested a fair hearing, which was held in March 1989. The hearing officer made a recommendation that the benefits be restored. The Commissioner of the Agency (Commissioner) did not concur with the hearing officer's recommendation. The Agency informed Primo of the nonconcurrence and entered an order terminating her Medicaid benefits. A requested rehearing was denied. Primo filed a Petition for Judicial Review in the Circuit Court of Mobile *Page 1356 
County. The circuit court reversed the Agency's termination order and found Primo to be eligible for Medicaid benefits. The Agency appeals.
Mary Primo, a resident of a nursing home, applied for and received Medicaid benefits beginning in November 1982. In December 1987 Lillian McCandless, Primo's sister, died testate. Her Last Will and Testament, together with two codicils, was probated and finally settled in September 1988. The second codicil, dated November 14, 1980, created the following testamentary trust:
 "In case my sister, MAE KLAAS PRIMO, shall survive me, I give, devise and bequeath all the rest, residue and remainder of my estate of whatever kind and character, and wheresoever situated, to my Trustees hereinafter named, in Trust, to be held, administered and distributed as hereinafter provided.
 "a) To pay to or use for the benefit of my sister, MAE KLAAS PRIMO, so much of the net income and principal as my Trustees, in their sole discretion, determine to be adequate, reasonable, and appropriate for her support, maintenance, and medical care. The term "medical care' as used herein shall be broadly construed, and shall include doctors, nurses, hospitals, retirement homes, and nursing homes. Any part of the net income not paid out shall be accumulated and added to and vested and thereafter treated as part of the principal of said trust.
 "b) Upon the death of my sister, MAE KLAAS PRIMO, this trust shall terminate, and the trust estate then in the custody of the Trustees shall be paid over free of trust to my niece, MARGARET KLAAS HICKMAN, and her two children, MICHAEL TIMOTHY HICKMAN and EDITH MARIE COBBLE, equally, share and share alike."
The trust estate at issue is comprised of a piece of realty with an estimated value of $53,666. The Agency found that the testamentary devise created a trust for the support, maintenance, and medical needs of Primo and as such was a resource available to her for the purpose of determining her Medicaid eligibility. In reaching this determination the Agency relied upon the Alabama Medicaid Agency Administrative Code, Rule No. 560-X-25-.08, which provides for the evaluation of an applicant's ownership interest in a liquid resource. The evaluation rule pertaining to trusts provides the following:
 "(4) Trusts — Whether the principal of a trust is a resource to the applicant/recipient depends on its availability to the applicant/recipient by the terms of the trust instrument itself."
The Agency, finding that the principal of the trust was available to Primo, determined that it was a resource that exceeded the financial eligibility criteria for the receipt of Medicaid benefits set at $1,900 for 1988 and $2,000 for 1989.
The court disagreed with the Agency's determination and entered an order finding the Agency's application of Rule 560-X-25.08 to be unreasonable, arbitrary, and an abuse of its discretion. The court determined that the principal of the trust was not available to Primo because all distributions, whether of income or principal, were to be made at the trustees' discretion. Finding that Primo's access to the principal was restricted, the court concluded that the trust could not be considered a resource for purposes of evaluating Primo's eligibility for Medicaid. The court found its interpretation to be in accord with the underlying federal principles controlling the distribution of Medicaid benefits.
The Agency initially asserts that the court usurped its limited review function under the Alabama Administrative Procedure Act (AAPA), Code 1975, §§ 41-22-1 through -27, by improperly substituting its judgment for that of the Agency.
The circuit court's standard of review in cases involving administrative agencies is limited. Alabama Medicaid Agency v.Norred, 497 So.2d 176 (Ala.Civ.App. 1986). Specifically, §41-22-20(k) provides that the Agency's order is to be taken as prima facie just and reasonable and that the court may not substitute its judgment for that of the Agency as to the weight of the evidence. *Page 1357 
The court, however, may reverse the Agency's decision "if substantial rights of the petitioner have been prejudiced because the agency action is. . . . [u]nreasonable, arbitrary or capricious or characterized by an abuse of discretion or a clearly unwarranted exercise of discretion." § 41-22-20(k)(7).
The court found the Agency's termination of Medicaid benefits to be unreasonable, arbitrary, and an abuse of the Agency's discretion. After a careful review of the Agency's action, the record, and the applicable law and regulations, we cannot say that the court erred in its finding. The sole issue on appeal, therefore, involves a legal determination as to whether the trust is an available resource that should be considered in the determination of Medicaid eligibility.
The United States Supreme Court has characterized the Medicaid statute as both "Byzantine," and "almost unintelligible to the uninitiated." Schweiker v. Gray Panthers, 453 U.S. 34, 101 S.Ct. 2633,69 L.Ed.2d 460 (1981). For the benefit of the uninitiated as well as the initiated, we find that a brief history of the development of the statute would be helpful in gaining insight into the issue involved in this appeal.
The Medicaid program was established in 1965 by Title XIX of the Social Security Act, see 42 U.S.C.A. §§ 1396 through 1396p (West 1982), to provide federal financial assistance to states that chose to reimburse certain costs of medical treatment for needy persons.Schweiker, at 36, 101 S.Ct. at 2636. States choosing to participate in the program were required to develop a plan for determining the eligibility of individuals seeking medical assistance.42 U.S.C.A. § 1396a(a). The criteria for eligibility included a maximum level of income and resources. Relevant to the determination, the state plan was required to "include reasonable standards . . . which provide for taking into account only such income and resources as are, as determined in accordance with standards prescribed by the Secretary, available to the applicant or recipient." 42 U.S.C.A. § 1396a(a)(17)(B).
Two types of recipients have traditionally received Medicaid assistance. The first group, the "categorically needy," are those already receiving general welfare payments under several federal programs. These programs were originally: Old Age Assistance, 42 U.S.C.A. § 301
et seq.; Aid to Families with Dependent Children,42 U.S.C.A. § 601 et seq.; Aid to the Blind, 42 U.S.C.A. § 1201 et seq.; and Aid to the Permanent and Totally Disabled,42 U.S.C.A. § 1351 et seq. The Medicaid laws required all participating states to provide benefits to the "categorically needy." The second category is the "medically needy." These are persons whose incomes are too high to qualify for one of the categorical programs, but who otherwise meet all the remaining categorical criteria. Providing assistance for the "medically needy" was optional even for those states that chose to participate in the general Medicaid program. If a state elected to supply benefits to both groups, it had to use the same eligibility criteria for both.Winter v. Miller, 676 F.2d 276 (7th Cir. 1982).
Effective January 1, 1974, Congress replaced three of the four categorical assistance programs with the Supplementary Security Income (SSI) program. 42 U.S.C.A. § 1381 et seq. This legislation was aimed at federalizing the three general welfare programs for the aged, blind, and disabled. Under the new program the federal government assumed the responsibility for defining standards of eligibility for the categorical (now SSI) assistance. Prior to the enactment of the SSI program the states had borne this responsibility. The new SSI eligibility standards were broader than some of the prior state-established criteria. Because of this leniency, the new standards threatened to expand Medicaid eligibility, which under the Social Security Act was linked conterminously with SSI eligibility. Congress, fearing a decrease in state participation, passed § 209(b) of the SSI Act, which authorized states imposing more restrictive guidelines as of January 1, 1972 to continue using those more restrictive guidelines. See42 U.S.C.A. § 1396a(f). Use of § 209(b) was optional; states could *Page 1358 
retain their more restrictive guidelines (§ 209 states) or they could adopt the federal SSI guidelines (SSI states). The SSI states were required to use the same methodology to determine income and resource eligibility of aged, blind, and disabled Medicaid applicants as would be employed under the SSI program. There are 37 SSI states, of which Alabama is one.
Therefore, in order to address the issue presented by this appeal, we must look to the SSI guidelines for guidance.
The SSI regulations, promulgated by the Social Security Administration, Department of Health and Human Services, has defined a resource as "cash or other liquid assets or any real or personal property that an individual owns and could convert to cash to be used for his support and maintenance." 20 C.F.R. § 416.1201(a) (1983). The regulations provide for certain items to be excluded in determining the resources of an individual. See 42 U.S.C.A. § 1382b(a). These exclusions do not include a specific trust exclusion. The Secretary, in its instructional manual, however, directly addresses the trust exclusion. It provides that the principal of a trust does not count as a resource to a claimant who is the beneficiary of the trust if his "access to the trust principal is restricted (e.g., only the trustee or court, etc., can invade the principal)." Social SecurityAdmin., Dept. of Health Human Services, Program Operations ManualSystem, SI 01120. 105 A. 2 (Oct. 1981). The trust principal is not considered a resource even if the trust provides a regular payment from the principal to the beneficiary. Id. If, however, "the beneficiary has unrestricted access to the principal of the trust, it is counted as a resource." Id. The Programs Operation Manual further states that a trustee's discretionary authority to invade the principal, "including invasion of the principal for support and maintenance of the beneficiary, does not mean that the principal is available to the claimant/beneficiary and, as such, should not be counted as a resource." Id.
The trust at issue here cannot be categorized as a true discretionary trust or as a true support trust. We find, however, a categorization of the trust to be unnecessary in this situation. The Secretary's instructional guidelines make it clear that a beneficial interest in a purely discretionary trust will not be counted as a resource since the beneficiary's access to the principal is restricted. It is also clear that even assets held in a support trust or a trust authorizing discretionary distribution of the principal for the support and maintenance of the beneficiary will not be counted as a resource for eligibility purposes. Based upon our review of the SSI guidelines and the Secretary's instructional manual, we find that the trust at issue should not be considered a resource in determining Medicaid eligibility.
The Agency suggests that we not defer to the Programs Operational Manual in making our determination regarding the exclusion of the trust. In our opinion, however, the instructional manual should be given more weight than the Agency suggests. We base this observation on the fact that Congress conferred on the Secretary exceptionally broad authority to prescribe standards for applying certain sections of the Act; specifically, the provision that participating states must grant benefits to eligible persons "taking into account only such income and resources as are, as determined in accordance with standards prescribed by the Secretary, available to the applicant." 42 U.S.C.A. § 1396a(a)(17)(B). Although there is no express exclusion concerning trusts in the Secretary's regulations, we are of the opinion that the definitional instructions promulgated by the Secretary for the benefit of the states' operations should also be "entitled to more than mere deference or weight." Schweiker.
The Agency's interpretation of its administrative rule cannot stand. To accept such an interpretation would be in direct contradiction of the Act itself. SSI states must adhere to the eligibility standards and methodology established by SSI. They may not establish Medicaid resource and income methodologies which are more restrictive than those under SSI. *Page 1359 42 U.S.C.A. § 1396a(a)(10)(C); Mowbray v. Kozlowski, 724 F. Supp. 404 (W.D.Va. 1989). On its face the state's administrative rule is not in conflict with SSI standards. The interpretation placed on the rule by the Agency, however, is arbitrary, unreasonable, and an abuse of the Agency's discretion. This case is affirmed.
The foregoing opinion was prepared by Retired Appellate Judge L. CHARLES WRIGHT while serving on active duty status as a judge of this court under the provisions of § 12-18-10(e), Code 1975, and this opinion is hereby adopted as that of the court.
AFFIRMED.
All the judges concur.