The plaintiffs, Kay Blankenship, Ann Marich, and Martha Stone, sued the City of Hoover, Alabama ("Hoover"), and Richard Smith, its finance director and custodian of records ("the finance director"), seeking a preliminary injunction; an order requiring Hoover "to produce [various] requested [public records and] documents for inspection and copying at a time and place convenient for Plaintiffs"; and a permanent injunction enjoining Hoover from "refusing to make its records available to citizens [of Hoover] for inspection and copying upon request" and from "ever again requiring [plaintiffs and/or] any citizen [of Hoover] to state a reason why inspection or copying of a public record is requested." The plaintiffs also requested attorney fees and costs. With consent of counsel, the trial court consolidated the hearing on the preliminary injunction with the hearing on the merits, and, upon hearing ore tenus
evidence, denied the relief requested by the plaintiffs. The plaintiffs filed the following post-judgment motions, which the trial court denied: a motion to amend the judgment; a supplemental motion to amend or vacate; and a motion for recusal. The plaintiffs appeal. We affirm.
The plaintiffs contend that Hoover's refusal to allow them "to inspect and copy *Page 247 
the documents requested [was] in violation of Alabama's 'Open Records Act,' [Ala. Code 1975, § 36-12-40 et seq.]" and that "[s]aid refusal [was] not protected by any exception to disclosure nor any privilege which Hoover has asserted." In their motion to amend the judgment, the plaintiffs contended that § 36-12-40 gives every citizen the unqualified right to inspect and copy public records; that § 36-12-40 contains no provisions authorizing the custodian of any public records to determine whether any stated reason was sufficient; and that the only prerequisites to the application of § 36-12-40 were that the record be public and that the person requesting the record be a citizen, which prerequisites, according to the plaintiffs, were established. The plaintiffs contend that the "very act of asking for a reason would have a chilling effect on [a] person's exercise of [the] right to see a public record"; and that the fact that they were citizens was reason enough.
Hoover contends that the trial court has discretion with regard to access to public records; that "no citizen has the unbridled right to harass public officials, abuse their records and demand repeated access while at the same time refusing to state whether or not they have a legitimate interest in the documents sought or a legitimate purpose in seeking them." Hoover contends that the policy it adopted with regard to providing information and with regard to the terms and conditions under which the information would be provided (as well as the simple request form prepared pursuant to that policy), was adopted in accordance with established case law that any person making a request to review records kept by the finance department must have a direct, legitimate interest in the documents sought; must make such request in writing and specify the documents sought and the reasons therefor; and may be charged a reasonable fee for any copies of documents provided. According to Hoover, this Court has conditioned the right of inspection on the language "without undue interference," but, Hoover says, there are no cases dealing directly with the issue of "undue interference." Rather, according to Hoover, every case has been resolved on the question whether a particular record is subject to disclosure. Hoover's position in this case is that the simple request form is in response to the undue interference of the plaintiffs — their constant demands to produce particular records, after the records have already been produced — in an effort to try to identify who was using the records, because, Hoover says, the plaintiffs had abused and misused the records. According to Hoover, the plaintiffs seek the records for the purpose of unduly interfering with the finance director's performance of his duties and some of them may be confidential, although Hoover is not insisting on that point. All the plaintiffs have to do is fill out a simple form and they can get any record they want.
Alabama Code 1975, § 36-12-40, provides that "[e]very citizen has a right to inspect and take a copy of any public writing of this state, except as otherwise expressly provided by statute." The cases in Alabama have upheld the citizen's right of free access to public records, within proper and reasonable guidelines:
 " 'It is not the unqualified [absolute] right of every citizen to demand access to, and inspection of the books or documents of a public office, though they are the property of the public, and preserved for public uses and purposes. . . . [The] individual who claims access to the public records and documents, . . . can properly be required to show that he has an interest in the document which is sought, and that the inspection is for a legitimate purpose.' [Quoting Brewer v. Watson, 71 Ala. 299, 304 (1882).]
". . . .
 ". . . The right of free examination is the rule, and the inhibition of such privilege, when the purpose is speculative, or from idle curiosity, is the exception."
Randolph v. State ex rel. Collier, Pinckard Gruber, 82 Ala. 527,528-29, 2 So. 714, 715 (1887). See Holcombe v. State exrel. Chandler, 240 Ala. 590, 200 So. 739 (1941); ExciseCommission of Citronelle v. State ex rel. Skinner, 179 Ala. 654, *Page 248 
60 So. 812 (1912); see, also, Phelan v. State ex rel. Rosenstok,76 Ala. 49 (1884).
 "[T]he public generally have the right of a reasonable and free examination of public records required by law to be kept by public officials, except in instances where the purpose is purely speculative or from idle curiosity, or such as to unduly interfere or hinder the discharge of the duties of such officer."
Holcombe v. State, 240 Ala. at 597, 200 So. at 746. (Citations omitted.)
 "Absent legislative action, . . . the judiciary must apply the rule of reason. Recorded information received by a public officer in confidence, sensitive personnel records, pending criminal investigations, and records the disclosure of which would be detrimental to the best interests of the public are some of the areas which may not be subject to public disclosure. Courts must balance the interest of the citizens in knowing what their public officers are doing in the discharge of public duties against the interest of the general public in having the business of government carried on efficiently and without undue interference."
Stone v. Consolidated Pub. Co., 404 So.2d 678, 681 (Ala. 1981). (Citations omitted.)
 "[This Court has] paid particular attention to the language in Stone [404 So.2d 678 (Ala. 1981)] that seeks to prescribe exceptions to the public disclosure requirement of public writings and records, together with the language in § 36-12-40. It is clear from the wording of § 36-12-40 that the legislature intended that the statute be liberally construed. In addition, we note, statutes intended for the public benefit are to be construed in favor of the public. Gant v. Warr, 286 Ala. 387, 240 So.2d 353 (1970).
 "To put the Stone 'exception' language into perspective, along with the language of § 36-12-40, we offer the following guidance. There is a presumption in favor of public disclosure of public writings and records expressed in the language of § 36-12-40. Limitations to the broad language of the statute are, nevertheless, necessary, and, as stated in Stone, absent legislative action, the judiciary has to apply the 'rule of reason' [in making case by case determinations about whether disclosure is required]. However, it must be noted that this 'rule of reason' shall not be applied so as to hamper the liberal construction of § 36-12-40. The exceptions set forth in Stone must be strictly construed and must be applied only in those cases where it is readily apparent that disclosure will result in undue harm or embarrassment to an individual, or where the public interest will clearly be adversely affected, when weighed against the public policy considerations suggesting disclosure. These questions, of course, are factual in nature and are for the trial judge to resolve. Moreover, the Stone exceptions should not come into play merely because of some perceived necessity on the part of a public official or established office policy. Furthermore, because there is a presumption of required disclosure, the party refusing disclosure shall have the burden of proving that the writings or records sought are within an exception and warrant nondisclosure of them.
 "Doubtless, exceptions to the broad language of § 36-12-40 are needed and should be applied under appropriate circumstances. But, we emphasize that these exceptions must be narrowly construed and their application limited to the circumstances stated herein, for it is the general rule, and has been the policy of this state for a number of years, to advocate open government. The Stone
exceptions were not intended, nor shall they be used, as an avenue for public officials to pick and choose what they believe the public should be made aware of."
Chambers v. Birmingham News Co., 552 So.2d 854, 856-57 (Ala. 1989) (emphasis added); see, also, Advertiser Co. v. AuburnUniversity, 579 So.2d 645 (Ala.Civ.App. 1991); Walsh v.Barnes, 541 So.2d 33 (Ala.Civ.App. 1989).
In this case, the trial court, after having heard the oretenus evidence, found the following: *Page 249 
 "1. The Plaintiffs have, on several occasions [at least eight times], requested records maintained by the Finance Department of the City of Hoover ('Hoover').
 "2. In the past, one or more of the Plaintiffs were allowed to call employees of Hoover, tell them which records they wanted to see, and employees of Hoover would copy the records requested [even index the records] and have the copies available when such Plaintiffs arrived. This was at no expense to the Plaintiffs.
 "3. On other occasions, one or more of the Plaintiffs were allowed to go through various records and use Hoover's copy machine to copy such parts of the records as they desired, without cost or expense to the Plaintiffs.
 "4. In late July, 1990, the Plaintiffs came to the office of Hoover's Financial Department and requested numerous records. They were provided with the records and a space in which to review the records. The Plaintiffs were allowed to make approximately 180 copies using Hoover's copy machine, without cost to the Plaintiffs. According to the testimony of . . . Hoover's Finance Director, while the Plaintiffs were copying the records, they pulled out many pages and generally left the record books in a damaged condition. While disputing that they left the books in a damaged condition, Plaintiff, Ann Marich, admitted that some of the pages 'came loose' and that she folded them and put them back in place.
 "5. As the result of the Plaintiffs' actions and after consulting counsel, [Hoover's finance director, with the approval of the mayor], developed a formal policy to be used when citizens requested public documents [from the finance department]. Part of the policy required the requesting citizens to fill out a form . . . [asking for] the name of the person making the request, the date, a list or description of the documents requested, and the reason why the person wishes to see the records. In asking for a reason, the form states:
 " '2. The reason(s) I desire to review these records is: (Check applicable box or boxes)
 "__________ To gain information regarding City government finance
"__________ Other (explain) __________'
 "A person may merely check the space before the printed reason and receive the requested records.
 "6. The Plaintiffs have refused to give any reason for looking at the records of the Finance Department and maintain that Hoover may not require them to give a reason.
 "7. On January [8], 1991, counsel for the Plaintiffs wrote a letter to [Hoover's finance director] requesting that the Plaintiffs be allowed to see numerous documents. Among the documents requested were 'All W-2 and 1099 forms showing all salary and other reportable payments by the City of Hoover on such forms since January 1, 1988.'
 "It is the position of Hoover that it is ready to allow the inspection of all of the records requested by the Plaintiffs, with the possible exception of the W-2 forms and 1099 forms, if the Plaintiffs will fill out the request form. It is the position of the Plaintiffs that Hoover may not require them to give any reason at all for wanting to see the records [because they are taxpayers and citizens of Hoover]. "Hoover has provided far more services and courtesies to the Plaintiffs than it is required to provide and . . . Hoover's request form is reasonable.
". . . .
 "Sections 36-12-40 et seq. are to be liberally construed in favor of the public. However, . . . there are some exceptions to, or limitations on, the application of these statutes, although the exceptions or limitations must be narrowly applied.
 "While on the witness stand, [Hoover's finance director] was asked by Plaintiffs' counsel if there was any reason a person might give that would cause [him] to refuse to allow that person to see the public records being requested. [Hoover's finance director] answered to the effect that, [as custodian of the records,] *Page 250 
if a person stated they wanted to see the records so that they could destroy them, [if the person put down anything that caused him to think that that reason might expose the records to danger,] he might not let them have the records [or if the person who signed the form had been abusive to the records or was mentally unstable, he might seek further action before approving the request]. The court finds that to be a plausible answer."
(Emphasis added.) (Citations omitted.)
Based on these findings, the trial court held as follows:
 "Hoover may [require persons requesting public records to fill out a form in the nature of the one offered in evidence in this case] ask[ing] why a person is seeking public records so long as the question is not intended to dissuade people from seeking the records and is not used in the ordinary course as a means to prevent people from having access to such records. . . .
 ". . . Hoover may establish a reasonable policy which limits the number of persons reviewing records at any one time as such limits may be required by its physical facilities and may limit the records reviewed at one time so as not to unduly interfere with the normal operation of the city government.
 ". . . [W]hile salary records in general are subject to inspection, there is no need for public scrutiny of individuals' W-2 forms. The rate of pay, even the gross pay of individual employees, must be made available upon request. However, the W-2 form would disclose whether or not an individual employee has elected to participate in income-deferral plans, insurance plans, or similar benefits which are more personal than public in nature. . . . [T]he W-2 forms of employees do not need to be produced. . . . [The 1099] forms may be produced for inspection upon request, [because the court is not aware that the 1099 forms contain sensitive personnel information]."
We agree. There is no evidence that the finance department's policy requiring individuals to fill out a request form before gaining access to public documents or records, such as the one at issue, was implemented by the finance department in order to dissuade or prevent any individual from acquiring access to public documents or records; nor was there any evidence to show that the request form allowed the finance director the power to hinder access or refuse disclosure based on perceived necessity or established office policy. Rather, the evidence established that the information provided by the request form would enable the City to assure that the requested inspection was for a legitimate or proper purpose and would allow the City to maintain the integrity of its records in a practical and workable manner, without undue interference. Furthermore, because of the very nature of W-2 forms, which contain information pertaining to income deferral, retirement, withholding, etc. — information which is more personal than public — Hoover is under no obligation to make these forms available for public disclosure.
Based on the foregoing, under the facts of this case, applying the ore tenus standard of review, see, Knight v. Lott,579 So.2d 1298 (Ala. 1991), we hold that the trial court was not plainly and palpably wrong.
The plaintiffs also contend that they are entitled to attorney fees and costs because they were required to litigate in order to have access to public records.
The general rule in Alabama is that attorney fees are recoverable only when authorized by statute, when provided in a contract, or by special equity. Lanier v. Moore-Handley,Inc., 575 So.2d 83 (Ala. 1991). In this case, there is no statute or contract providing for the award of attorney fees; and, based on the facts before us, we find no exceptions founded on equitable principles within which to fit this case. Therefore, we hold that the trial court did not err in refusing to award attorney fees.
The plaintiffs further contend that there was an indication of an ex parte communication between the trial judge and the attorney for the City, and that the trial *Page 251 
judge therefore should have recused or, at least, should have provided on the record a complete explanation of the communication — that is, they contend that the trial judge should have provided all the details of the alleged ex parte communication, including the date, the place, the length, the substance, and the initiator of the communication. The plaintiffs contend that as a result of this alleged ex parte communication, the trial court had or appeared to have personal knowledge or influence that was not part of the record in this case and that they were therefore deprived of their right to a fair and impartial hearing.
According to Canon 3C(1), Alabama Canons of Judicial Ethics, "A judge should disqualify himself in a proceeding in which . . . his impartiality might reasonably be questioned." However, Canon 3C(1) does not require disqualification upon mere allegations of bias that are not supported by substantial fact; and the party seeking recusal must come forward with evidence establishing the existence of bias or prejudice.
In this case, the plaintiffs predicated their motion for recusal on an entry on a billing statement that counsel for the City submitted to the City, which referred to a telephone conversation with the trial judge. The record indicates that the plaintiffs' counsel was given a full explanation of the circumstances surrounding the conversation and was advised that the conversation did not actually occur between the City's counsel and the trial judge, but rather took place between the legal assistant to counsel for the City and the trial judge's secretary. There is no evidence suggesting that the trial judge was biased or predisposed towards the City on the issue of the right of access to public records. There is no evidence to support the charge that the trial court was biased or prejudiced against the plaintiffs. Therefore, we hold that the trial court did not err in refusing to disqualify himself.
In addition, the plaintiffs contend that the trial court abused its discretion in refusing to take additional testimony after it had entered the judgment, when they presented an affidavit that, they say, established that the City was not uniformly enforcing the records policy of the finance director. The affidavit submitted by the plaintiffs pertained to records that the affiant had obtained from the city clerk's office without having been required to complete a request form. It did not pertain to records obtained from the finance department. The city clerk's office and the finance department are separate offices of the City. This case involves the policy and request form developed and implemented for the finance department. Therefore, the trial court did not err in denying the motion.
AFFIRMED.
HORNSBY, C.J., and MADDOX, SHORES, STEAGALL, KENNEDY and INGRAM, JJ., concur.
ADAMS, J., concurs in part and dissents in part.