The appellant, Robert T. Munger, graduated from the University of Arkansas with a bachelor of architecture degree and then *Page 281 
entered a three-year internship under the supervision of registered architects. After his internship ended, Mr. Munger went to Texas and sat for the Architects' Registration Examination (AR Exam), which is a four-day examination administered by the National Council for Architectural Registration Boards (NCARB). With the exception of building design, Mr. Munger received passing scores on all portions of the examination. The building design portion of the examination requires the applicant to produce architectural drawings of a specific type building within a 12-hour period or less.
The following year, while working in Arkansas, Mr. Munger again took the building design portion of the AR Exam. Mr. Munger failed to receive a passing score on the building design portion. After moving to Alabama, Mr. Munger took the building design portion of the AR Exam on three consecutive occasions in Alabama. Mr. Munger did not pass the building design portion of the exam on any of these occasions.
The Alabama State Board for Registration of' Architects (Board) is statutorily responsible for testing and licensing applicants for the practice of architecture. §§ 34-2-30
through -42, Code 1975. The Board requires that all prospective architects seeking registration in Alabama successfully complete the AR Exam. Until a prospective architect passes this examination, he is classified as an intern architect as opposed to a licensed or registered architect.
After the last unsuccessful attempt at the building design portion of the examination, Mr. Munger filed a complaint against the Board. In Count I of his complaint, Mr. Munger claimed that he was entitled to a hearing before the Board in order to establish that the Board had acted unreasonably, arbitrarily, and capriciously, and had abused its discretion in failing to register or license Mr. Munger as an architect. In Count II, Mr. Munger claimed that the Board and its members, acting in their official and individual capacities and acting under color of state law, had deprived him of his civil rights guaranteed under 42 U.S.C. § 1983. Finally, in Count III, Mr. Munger claimed that he was entitled to a declaratory judgment because, he claimed the Board had acted unreasonably, arbitrarily, and capriciously, and had abused its discretion in failing to register or license Mr. Munger as an architect.
The Board filed a motion for summary judgment, challenging all three counts of Mr. Munger's complaint. In its motion for summary judgment, the Board maintained that Mr. Munger was not entitled to the hearing he requested under Count I because, it claimed, the non-certification of an applicant who receives a failing score on the building design section of the AR Exam was not a "contested case" warranting a hearing under Alabama law. The Board stated that Count II, alleging a violation of42 U.S.C. § 1983, was due to be dismissed because Alabama statutory authority concerning the admission of architects is rationally related to a legitimate state purpose. Further, the Board asserted that the Board and its members have either qualified immunity or absolute legislative immunity. Last, the Board claimed that Mr. Munger's request for a declaratory judgment under Count III was not a proper vehicle to obtain review of an agency action. The trial court denied summary judgment on Count I and Count III of Mr. Munger's complaint and granted summary judgment as to Count II. The trial court also entered a summary judgment for the individual board members.
The trial court subsequently conducted a non-jury trial on the remaining two counts. During the course of the trial, both sides called several experts to testify about the standards used to evaluate AR Exam applicants and whether any of Mr. Munger's exams should have received a passing grade. According to these experts, there were four criteria jurors should consider in grading an examination: (1) program requirements; (2) design logic; (3) technical compliance; and (4) code compliance. There is a fifth component called completeness and clarity, but this is not a category that is graded. An applicant must satisfy *Page 282 
all four requirements in order to receive a passing grade on the examination.
All of the experts evaluated Mr. Munger's exam and several other exams from other applicants. All but one of the experts testified that Mr. Munger's examination did not satisfy one or two of the aforementioned requirements. The one expert that gave Mr. Munger's examination a passing score had never served as a juror, nor had he evaluated an AR Exam applicant's performance prior to this trial. Mr. Munger testified that in his opinion he passed the building design portion of the AR Exam.
The trial court held in favor of the Board and found that it was in no position to substitute its judgment for that of the NCARB, nor was it of the opinion that it should issue an order requiring the Board to issue a license and register Mr. Munger as an architect within the State of Alabama. The trial court also found no evidence that Mr. Munger's examination was treated any differently from any other examination taken by any other candidate. Finally, the court determined that there was no evidence that the Board had acted unreasonably, arbitrarily, or capriciously, or that it had abused its discretion in failing to register or license Mr. Munger as an architect. Mr. Munger appeals.
The following three issues are presented to this court for review on appeal: (1) whether the trial court properly held that the Board did not act unreasonably, arbitrarily, or capriciously and did not abuse its discretion in refusing to issue Mr. Munger a certificate of registration as an architect after he failed to pass the AR Exam; (2) whether the trial court erred in granting the individual board members' motion for summary judgment; and (3) whether the trial court erred in holding that the examinations of successful candidates were privileged information and in granting a protective order regarding those documents.
Section 41-22-20(k), Code 1975, establishes the standard of review applied by the trial court in this case. This section provides:
 "Except where judicial review is by trial de novo, the agency order shall be taken as prima facie just and reasonable and the court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact, except where otherwise authorized by statute. The court may affirm the agency action or remand the case to the agency for taking additional testimony and evidence or for further proceedings. The court may reverse or modify the decision or grant other appropriate relief from the agency action, equitable or legal, including declaratory relief, if the court finds that the agency action is due to be set aside or modified under standards set forth in appeal or review statutes applicable to that agency, or where no such statutory standards for judicial review are applicable to the agency, if substantial rights of the petitioner have been prejudiced because the agency action is:
". . . .
 "(7) Unreasonable, arbitrary or capricious or characterized by an abuse of discretion or a clearly unwarranted exercise of discretion."
This court applied this same standard in Alabama MedicaidAgency v. Primo, 579 So.2d 1355 (Ala.Civ.App. 1991), in reviewing a trial court's judgment not to reverse an agency's decision. In accordance with that holding, we will apply the same standard of review in this case.
 I.
The Alabama legislature provides in § 34-2-33(c)(1), Code 1975, that an applicant must satisfy one of the following two criteria in order to establish prima facie evidence satisfactory to the board that the applicant is fully qualified to be examined for certification: "(1) [g]raduation after a course of study of such length as the board shall by regulation determine from a school or college of architecture accredited by the national architectural accrediting board . . . and an additional period of practical experience in architectural work under the control and supervision of a registered architect or architects as the board by regulation *Page 283 
shall deem appropriate; or (2) [a]cceptable combinations of education and apprenticeship as may be established by the board. . . ." Regardless of which category the prospective applicant falls into, § 34-2-33(c) provides that "[s]uch applicants must take and pass the professional examination administered by the board."
Mr. Munger asserts on appeal that the NCARB's examination was fatally flawed due to the low pass rates of the applicants taking the examination and due to the subjective nature of the building design portion of the examination. Mr. Munger also claims that the trial court mistakenly decided that it was not in a position to substitute its decision for that of the Board. Although Mr. Munger cites Harac v. Department ofProfessional Regulation, 484 So.2d 1333 (Fla.Dist.Ct.App. 1986), as authority for the proposition that a trial court may intervene in the Board's decision, we find his reliance on this case to be misplaced. In Harac, an applicant failed the AR Exam and, pursuant to Florida law, sought to have his test reviewed in an administrative hearing. At the hearing, he introduced evidence that one of the applicant's three grades on the building design portion of the AR Exam was a score of one even though his examination was complete. According to the NCARB, an applicant only receives a score of one if his examination is incomplete. Accordingly, the hearing officer decided to disregard that score. The applicant's remaining scores were two, a failing grade, and three, a passing grade. The hearing officer selected a tie-breaking score from the opposing opinions of two experts who regraded the applicant's examination. Harac. According to the expert selected by the hearing officer, the applicant passed the AR Exam. In its opinion, the district court ordered that the applicant be deemed to have passed the AR Exam and was eligible to register as an architect licensed by the State of Florida.Harac. The facts of Harac are entirely different from the facts of this case. Mr. Munger did not receive a passing score from any of the nine jurors that evaluated his past three examinations. Furthermore, Mr. Munger never received an impermissible score of one on any of his completed examinations. Hence, we find that Harac is inapplicable and that the trial judge properly deferred to the judgment of the Board.
In this case, the record clearly establishes that the Board relied on the NCARB's national administration of a professional examination in order to evaluate applicants. The record is devoid of evidence indicating that Mr. Munger was unfairly treated either by the NCARB or by the Board. Since Mr. Munger did not successfully complete the professional examination, the Board was not bound to register Mr. Munger as an architect. Therefore, we cannot hold that the trial court erred when it determined from the testimony that there was no evidence that the Board acted unreasonably, arbitrarily, or capriciously, or that it abused its discretion in refusing to register Mr. Munger as an architect in the State of Alabama.
 II.
The second issue raised on appeal is whether the trial court erred in granting the individual board members' motion for summary judgment. The standard of review appropriate for a case containing a motion for summary judgment is set forth inHolcomb v. Arma, Inc., 575 So.2d 575 (Ala.Civ.App. 1991). In Holcomb, this court held that
 "[s]ummary judgment is proper when the trial court determines that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law. In addition, in our review of the trial court's grant of summary judgment, we apply the same standard as that applied by the court below."
Holcomb at 576 (citations omitted).
In considering the appropriateness of the trial court's decision to grant summary judgment, we must determine whether the individual board members were "persons" within the meaning of 42 U.S.C. § 1983. The United States Supreme Court held in Will v. Michigan Department of State Police,491 U.S. 58, 71, 109 S.Ct. 2304, 2312, 105 L.Ed.2d 45 (1989), that "neither a State nor its officials acting in their official capacities are 'persons' under § 1983." Mr. *Page 284 
Munger cites Parker v. Downing, 547 So.2d 1180, 1182
(Ala.Civ.App. 1988), for the proposition that in order to state a cause of action under 42 U.S.C. § 1983, "the plaintiff must allege that some person has deprived him of a federal right." We agree with this standard; however, this court must also abide by the decision of the United States Supreme Court regarding the appropriate parameters of the term "person" for purposes of 42 U.S.C. § 1983. Accordingly, we find that the trial court properly granted summary judgment in favor of the individual board members in this case. Further, since the Board could not be a "person" within the meaning of § 1983, the trial court properly granted summary judgment in favor of the Board regarding the 42 U.S.C. § 1983 claim in Count II of Mr. Munger's complaint.
 III.
Last, we consider whether the trial court erred in holding that the examinations of successful candidates were privileged information and in granting a protective order regarding those documents. Mr. Munger sought to disclose the contents of applicants' examinations pursuant to § 36-12-40, Code 1975, also known as the Open Records Act. This section states that "[e]very citizen has a right to inspect and take a copy of any public writing of this state, except as otherwise expressly provided by statute." In determining whether the trial court properly granted a protective order regarding these documents, we initially note that "[t]here is a presumption in favor of public disclosure of public writings and records expressed in the language of § 36-12-40." Chambers v. BirminghamNews Co., 552 So.2d 854, 856 (Ala. 1989).
In Stone v. Consolidated Publishing Co.,404 So.2d 678 (Ala. 1981), our supreme court utilized the rule of reason in establishing the appropriate limitations to § 36-12-40, Code 1975. In Stone, our supreme court held that "the 'public writing' spoken of in § 36-12-40, Code 1975, is such a record as is reasonably necessary to record the business and activities required to be done or carried on by a public officer so that the status and condition of such business and activities can be known by our citizens." Stone at 681. The examinations sought by Mr. Munger are not records of the business and activities of the Board; therefore, these examinations are not public writings. However, even if these examinations had been within the scope of § 36-12-40, the trial court would not have erred in granting the Board's request for a protective order. In Stone, our supreme court provided the following balancing test in order for courts to determine whether a party should be granted access to requested information:
 "Courts must balance the interest of the citizens in knowing what their public officers are doing in the discharge of public duties against the interest of the general public in having the business of government carried on efficiently and without undue interference."
Stone at 681. Since the trial court granted Mr. Munger access to these examinations prior to and during the trial, we find that the interest of the citizens in seeing the examinations of past applicants is not outweighed by the interest of the general public in having the business of the Board carried on efficiently and without undue interference.
For the foregoing reasons, the decision of the trial court is due to be affirmed.
AFFIRMED.
THIGPEN and RUSSELL, JJ., concur.