[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 712 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 713 
Jackie Graham, in her personal capacity and in her official capacity as the director of the Alabama State Personnel Department ("the SPD"), appeals from the Montgomery Circuit Court's order directing her to produce to the Alabama State Employees Association ("the ASEA") certain documents, pursuant to § 36-12-40 et seq., Ala. Code 1975 ("the Open Records Act"). The ASEA cross-appeals, asserting that the trial court erred in determining that certain personnel records were exempt from being produced. We affirm as to Graham's appeal; we reverse as to the ASEA's cross-appeal.
 Background
On June 17, 2005, pursuant to the Open Records Act, the ASEA, through its legal counsel, requested the SPD to produce the following documentation:
 "1. The job description that was utilized to fill the position of administrative law judge with the State Personnel Department.
 "2. Documentation reflecting the method utilized to fill the position of administrative law judge within the State Personnel Department (e.g., open competitive register, contract, etc.).
 "3. Documentation reflecting whether the incumbent administrative law judge within the State Personnel Department is a temporary or permanent appointment.
 "4. Documentation reflecting any job announcement for the position of administrative law judge within the State Personnel Department.
 "5. Documentation reflecting a list of any eligible individuals for the position of administrative law judge within the State Personnel Department.
 "6. Documentation, reflecting the name, previous positions held, qualifications, résumé and current salary or compensation of the individual holding the position of administrative law judge within the State Personnel Department.
 "7. Documentation reflecting the complete annual fiscal note, i.e., retirement, insurance, etc., associated with filling the position of administrative law judge within the State Personnel Department.
 "8. Documentation reflecting the date that the incumbent administrative law judge commenced employment with the State Personnel Department.
 "9. Documentation reflecting the work schedule of the incumbent administrative law judge.
 "10. Documentation reflecting the supervisory chain of command of *Page 714 
the incumbent administrative law judge within the State Personnel Department.
 "11. Documentation including any audio or video material reflecting any instructions given to the incumbent administrative law judge concerning the position of administrative law judge for the State Personnel Department.
 "12. Documentation including any audio or video material reflecting any instructions given to the incumbent administrative law judge concerning the handling and/or disposition of cases presented for the administrative law judge's decision or recommendation to the State Personnel Board or others.
 "13. Documentation reflecting the supervisory chain of command for the previous administrative law judge (Richard Meadows) within the State Personnel Department.
 "14. A complete copy of Richard Meadows's personnel file.
 "15. Lastly, please make available for my inspection and review all rulings, opinions and recommendations entered by the incumbent administrative law judge to the Alabama State Personnel Board."
On July 13, 2005, the SPD's general counsel responded to the request, stating that the ASEA must specify a legitimate purpose for the requested documents, pursuant to Blankenship v. Cityof Hoover, 590 So.2d 245 (Ala. 1991). The ASEA then denied that it was required to provide any reason for its request; despite that denial, the ASEA stated that it was "seeking the documents to gain information regarding the position of the State Personnel Department's administrative law judge."
The SPD's legal counsel replied to the ASEA's request, indicating that the SPD would make the requested documents available upon receipt of the information required byBlankenship, supra. The ASEA and the SPD exchanged additional correspondence, and the ASEA expanded its request to include documentation of
 "the written policy of the [SPD] . . . if such a policy exists, governing its disclosure of public documentation maintained by the [SPD]. This includes a request for documentation reflecting the date of the policy's adoption and any section of that policy defining the phrase, `legitimate purpose.'"
The ASEA also added that it was seeking the requested information consistent with its purpose of "promoting and protecting the interests of state employees." The SPD did not produce the requested documents.
On October 19, 2005, the ASEA filed an action against Tommy Flowers, the director of the SPD at that time, in his personal and his official capacities, seeking a judgment declaring that the ASEA was entitled to the requested documents and a writ of mandamus directing Flowers to produce the documents. The ASEA alleged that Flowers had unlawfully and willfully refused to produce the requested documents, as required by the Open Records Act (§ 36-12-40 and § 36-12-41, Ala. Code 1975), § 36-26-44, Ala. Code 1975, and Alabama Administrative Code (SPD), Rule 670-×-17-.03. Jackie Graham, who had replaced Flowers as the director of the SPD, answered the complaint and was substituted as the proper party, pursuant to Rule 25, Ala. R. Civ. P.
On October 27, 2006, the trial court ordered that Graham produce all the requested documents, with the exception of those responsive to request number 5 (seeking "[d]ocumentation reflecting a list *Page 715 
of any eligible individuals for the position of administrative law judge within the State Personnel Department") and request number 14 (seeking "[a] complete copy of Richard Meadows's personnel file"); it also ordered that certain personal information contained in the documents to be produced be redacted before production. The trial court also prohibited Graham from producing any documents responsive to request number 15 ("all rulings, opinions and recommendations entered by the incumbent administrative law judge to the Alabama State Personnel Board") if those documents had been placed under seal.[1] The trial court concluded that the language of §§ 36-12-40, 36-12-41, and 36-26-44 was unambiguous and that there was "no room for judicial construction and the clearly expressed intent of the legislature must be given effect." The trial court also concluded that the ASEA had demonstrated a clear legal right to the requested documents and that the documents sought had not been deemed confidential by the SPD. The trial court, therefore, issued the requested writ of mandamus and dismissed all other claims.
On November 1, 2006, Graham filed a motion to stay the trial court's October 27, 2006, order; the trial court denied that motion. On November 8, 2006, Graham filed a motion to alter, amend, or vacate the trial court's order; the trial court denied that motion.[2] On November 9, 2006, Graham filed a notice of appeal to this court; Graham also sought from this court a stay of the trial court's order. This court denied the motion to stay on November 13, 2006. On that same date, the SPD produced to the ASEA the documents as ordered by the trial court.
On November 27, 2006, the ASEA filed a "Motion to Reconsider," asking the trial court to grant it access to the documents responsive to request number 14, pertaining to former administrative law judge Richard Meadows. The trial court denied that motion on December 1, 2006.
The ASEA then cross-appealed as to that portion of the trial court's order exempting from production the personnel records applicable to Meadows. This court transferred Graham's appeal and the ASEA's cross-appeal to the Alabama Supreme Court for lack of subject-matter jurisdiction; that court subsequently transferred the case back to this court, pursuant to § 12-2-7(6), Ala. Code 1975.
 Standard of Review
The trial court issued its writ of mandamus after reviewing the pleadings and the applicable statutes. The issue before the trial court — whether the ASEA was entitled to the requested documents — was a question of law. Therefore, we review the trial court's judgment de novo. "[W]here the facts are not in dispute and we are presented with pure questions of law, [the] standard of review is de novo." State v. AmericanTobacco Co., 772 So.2d 417, 419 (Ala. 2000) (citing Exparte Graham, 702 So.2d 1215 (Ala. 1997), and Beavers v.County of Walker, 645 So.2d 1365 (Ala. 1994)).
A writ of mandamus will issue only if the following elements are established: "(1) the petitioner must establish a clear, legal right to enforcement of the requested order; (2) the respondent must have refused to perform a mandatory duty; (3) mandamus must be the only adequate *Page 716 
remedy available to [the] petitioner; and (4) the court's jurisdiction must be properly invoked." Deloney v.Teague, 508 So.2d 1174, 1176 (Ala.Civ.App. 1987) (citingBarber v. Covington County Comm'n, 466 So.2d 945
(Ala. 1985)).
 Mootness
Before proceeding to the merits of the case, we must first consider whether Graham's appeal has been rendered moot by SPD's compliance with the trial court's order. In Chapman v.Gooden, 974 So.2d 972 (Ala. 2007), our supreme court recognized that "an exception exists for a `moot case involving issues of great importance, which may recur in the future.'"Chapman, 974 So.2d at 989 (quoting 1A C.J.S.Actions § 81 (2005)). Referring to this exception as the "public-interest exception," the court inChapman stated:
 "`The criteria for applying the public interest exception to the mootness doctrine include the public nature of the question, the desirability of an authoritative determination for the purpose of guiding public officers, and the likelihood that the question will generally recur.' [1A C.J.S. Actions
§ 81 (2005)] (footnote omitted). However, this `exception is construed narrowly . . . and a clear showing of each criterion is required to bring a case within its terms.' In re Adoption of Walgreen, 186 Ill.2d 362, 365, 710 N.E.2d 1226, 1227 (1999)."
Chapman, 974 So.2d at 989. We conclude that the issues raised by Graham in her appeal meet the public-interest exception to the mootness doctrine. We, therefore, address those issues herein.
 Applicable Statutes and Regulation
In addressing the parties' dispute, we begin by reviewing the applicable statutory language. Section 36-12-40 provides, in pertinent part, that "[e]very citizen has a right to inspect and take a copy of any public writing of this state, except as otherwise expressly provided by statute." Section 36-12-41
provides:
 "Every public officer having the custody of a public writing which a citizen has a right to inspect is bound to give him, on demand, a certified copy of it, on payment of the legal fees therefor, and such copy is admissible as evidence in like cases and with like effect as the original writing."[3]
Additionally, in § 36-26-44, the legislature specifically addressed the availability of the records and documents maintained by the SPD. That section provides:
 "The records of the [SPD], except such records as the rules may require to be held confidential by reasons of public policy, shall be public records and shall be open to public inspection, subject to regulations as to the time and manner of inspection which may be prescribed by the director."
Pursuant to the authority granted it to promulgate rules for the proper administration of the SPD, the SPD adopted Rule 670-×-17-.03, Ala. Admin. Code, designating the following personnel records as confidential:
 "(a) Applications for examination of persons who have not been employed.
 "(b) Lists of eligibles who have competed successfully on examinations. *Page 717 
 "(c) Test materials such as written tests or forms or instructions which if known to an applicant might give him an advantage in competing for appointment or promotion."
 Discussion
Graham first argues that the trial court erred in not requiring the ASEA to present a legitimate purpose for requesting the documents in compliance with Blankenship v. City ofHoover, 590 So.2d 245. In Blankenship, our supreme court said:
 "The cases in Alabama have upheld the citizen's right of free access to public records, within proper and reasonable guidelines:
 "`"It is not the unqualified [absolute] right of every citizen to demand access to, and inspection of the books or documents of a public office, though they are the property of the public, and preserved for public uses and purposes. . . . [The] individual who claims access to the public records and documents, . . . can properly be required to show that he has an interest in the document which is sought, and that the inspection is for a legitimate purpose." [Quoting Brewer v. Watson, 71 Ala. 299, 304 (1882).]
 "`. . . .
 "`. . . The right of free examination is the rule", and the inhibition of such privilege, when the purpose is speculative, or from idle curiosity, is the exception.'"
Blankenship, 590 So.2d at 247. In response, the ASEA asserts that the holding in Blankenship does not apply to this case and that it did not have to state a legitimate purpose for requesting the documents under the applicable statutes.
Due to the facts of this case, we need not decide the question whether the holding in Blankenship applies to the ASEA's request for documents from the SPD. In response to the SPD's inquiries, the ASEA indicated that it was seeking to gain information regarding the position of administrative law judge within the SPD; the ASEA also indicated that it was, "promoting and protecting the interests of state employees." Graham counters that the ASEA intends to use the documents as a basis for introducing legislation aimed at eliminating the position of administrative law judge. As discussed below, any one of those purposes constitutes a legitimate reason for seeking access to public documents.
The purpose of the Open Records Act is to allow private citizens to monitor the manner in which public officers discharge their public duties. See Stone v. Consolidated Publ'g Co.,404 So.2d 678, 681 (Ala. 1981); Munger v. State Bd. forRegistration of Architects, 607 So.2d 280, 284
(Ala.Civ.App. 1992) (quoting Stone, supra); andWater Works Sewer Bd. of Talladega v. ConsolidatedPubl'g, Inc., 892 So.2d 859, 862 (Ala. 2004). That right is the same whether the requestor is a single individual or a group of private citizens. Additionally, the public's right to access public documents does not depend upon whether the requestor intends to support or challenge the manner in which a public duty has been discharged.
In Walsh v. Barnes, 541 So.2d 33 (Ala.Civ.App. 1989), this court held that an individual was entitled to obtain public documents even if that individual intended to use the information contained in those documents to further his or her own private commercial interests. If an individual is entitled to access public records for use in furthering his or her personal financial interests, surely the ASEA is entitled to access public records in order to fully represent its members' public or political interests. *Page 718 
Because the ASEA presented a legitimate purpose for requesting Graham's documents, we reject SPD's argument that the trial court erred in failing to follow Blankenship.
Graham next asserts that the trial court erred in issuing the writ of mandamus. Graham asserts that the ASEA failed to show a clear legal right to the requested documents because, Graham alleges, the ASEA failed to follow Blankenship. We have already rejected that argument. Graham further argues that, as director of the SPD, she has discretion to determine whether a citizen has stated a legitimate purpose for gaining access to public records and that a writ of mandamus cannot be issued to compel a public official to exercise his or her discretion in a particular manner. However, Graham has failed to cite any legal authority for the proposition that, as director of the SPD, she has discretion to determine whether a citizen has presented a legitimate reason for requesting documents. See Washingtonv. Hill, 960 So.2d 643, 650 (Ala. 2006) (holding that appellate court will not consider arguments unsupported by citations to legal authority).
In any event, we have already concluded that the ASEA provided a legitimate reason for seeking the requested documents. Once a citizen expresses a legitimate reason for seeking public SPD records that have not been deemed confidential, neither the SPD nor its director has discretion with regard to whether they will produce the document. By statute, the only discretion vested in the director of the SPD at that point is the discretion to promulgate regulations controlling the time and manner of the production. See Ala. Code 1975, § 36-26-14.
"`"`Alabama law has defined "discretionary acts" as "`[t]hose acts [as to which] there is no hard and fast rule as to course of conduct that one must or must not take' and those requiring `exercise in judgment and choice and [involving] what is just and proper under the circumstances.'"'"'" Hollis v.City of Brighton, 950 So.2d 300, 307 (Ala. 2006) (quotingBlackwood v. City of Hanceville, 936 So.2d 495, 504
(Ala. 2006), quoting in turn Norris v. City ofMontgomery, 821 So.2d 149, 153 (Ala. 2001), quoting in turnMontgomery v. City of Montgomery, 732 So.2d 305, 310
(Ala.Civ.App. 1999)). In contrast, "`"[o]fficial action, the result of performing a certain and specific duty arising from fixed and designated facts, is a ministerial act."'" O'Barrv. Feist, 292 Ala. 440, 445, 296 So.2d 152, 156 (1974) (quoting Perkins v. United States Fidelity GuarantyCo., 433 F.2d 1303, 1305, quoting in turn Rainey v.Ridgeway, 151 Ala. 532, 535, 43 So. 843, 844 (1907)). Because the operative statutes unequivocally direct the SPD to produce nonconfidential public documents, any production would be considered a ministerial act that a circuit court may properly compel by a writ of mandamus. Therefore, the trial court did not err in issuing the requested writ of mandamus in this case.
Graham next asserts that the trial court's order "violates federal merit system and privacy laws, placing at risk millions in federal funding for state agencies." As authority for this argument, Graham relies on 42 U.S.C. § 4701 et seq. (1970), the "Intergovernmental Personnel Act" ("the IPA"). Graham asserts the following:
 "The purpose of the [IPA] . . . is to provide `Federal financial and technical assistance to State and local governments for strengthening their personnel administration in a manner consistent with [merit] principles. 42 U.S.C. § 4701. Under the IPA, state and local *Page 719 
governments are required to maintain merit employment systems in order to receive certain federal grants and funding. See 42 U.S.C. §§ 4722, 4743 4766. The Act pronounces that state and local governments that administer programs financed in part by federal funds are required to upgrade their state personnel administration consistent with such merit principles as —
 "`(4) retaining employees on the basis of the adequacy of their performance, correcting inadequate performance, and separating employees whose inadequate performance cannot be corrected;
 "`(5) assuring fair treatment of applicants and employees in all aspects of personnel administration without regard to political affiliation, race, color, national origin, sex, or religious creed and with proper regard for their privacy and constitutional rights as citizens; and
 "`(6) assuring that employees are protected against coercion for partisan political purposes
and are prohibited from using their official authority for affecting a result for an election or a nomination for office.'"
(Quoting 42 U.S.C. § 4701(4)-(6); emphasis added by Graham.) After careful consideration of Graham's arguments in this regard, we find nothing in the trial court's order that runs afoul of the IPA. The trial court ordered Graham to redact the following from the documents requested by the ASEA: "personal information, such as social security numbers, names of minor children, dates of birth, addresses of individuals, financial account numbers, marital status, medical information, confidential recommendations of employment, and drug or alcohol testing results." The order thus protects the privacy of the individuals mentioned in the documents while affording the ASEA the public information it has requested. Furthermore, Graham has failed to show how the disclosure of the requested documents will expose the SPD's employees to any unfair treatment or political coercion that they would not be exposed to absent the disclosure.
Graham also argues that the balancing test, discussed at length in National Archives Records Administration v.Fairish, 541 U.S. 157, 124 S.Ct. 1570, 158 L.Ed.2d 319
(2004), must be applied any time disclosure of documents "could reasonably be expected to constitute an unwarranted invasion of personal privacy." We disagree.
In Favish, a private citizen requested photographs that were made during the investigation of a public official's alleged suicide; that request was made pursuant to5 U.S.C. § 552, "the Freedom of Information Act" ("the FOIA"). During the convoluted litigation process involved in Fairish, Favish's request was denied, then granted, then limited to only certain documents. On certiorari review, the United States Supreme Court considered Favish's request in light of the express exemptions from disclosure contained in the FOIA. The Court noted that Exemption 6 of the FOIA exempts "`personnel and medical files'" from coverage under the FOIA if disclosure "`would constitute a clearly unwarranted invasion of personal privacy.'" 541 U.S. at 165, 124 S.Ct. 1570. The Court also noted that Exemption 7(C) of the FOIA provides that records or information are not to be released under the FOIA if disclosure "`"could reasonably be expected to constitute"`" an unwarranted invasion of personal privacy. 541 U.S. at 166, 124 S.Ct. 1570
(quoting United States Dep't of Justice v. ReportersCommittee for Freedom of the Press, 489 U.S. 749, 756,109 S.Ct. 1468, 103 L.Ed.2d 774 (1989)). *Page 720 
Relying on Exemption 7(C), the Court in Favish held that certain photographs of the decedent's body were not to be released because of privacy concerns for the decedent's living relatives. In reaching its conclusion, the Supreme Court stated that "[w]e have observed that the statutory privacy rightprotected by Exemption 7(C) goes beyond the common law and the Constitution." 541 U.S. at 170, 124 S.Ct. 1570 (emphasis added).
By that statement, the Court in Favish recognized that it was interpreting and applying only the statute before it — the FOIA — not some general privacy right recognized or created by the United States Constitution or by the common law. Thus, we find nothing in Favish that would require application of the specific balancing test in the FOIA to all circumstances involving privacy concerns.
Additionally, we note that the express language of the FOIAspecifically required the balancing of privacy interests against the need for disclosure to the public. In this case, we are dealing with statutes that do not include the same language found in the FOIA. Thus, we can find no basis for requiring courts to apply the approach to privacy interests under the FOIA when considering requests made under the applicable state statutes.
More significantly, we conclude that the applicable statutes, as construed by our appellate courts, do not improperly infringe on individual privacy interests. In Stone, our supreme court recognized that certain information, although contained in public records, should not be disclosed to the public:
 "This is not to say, however, that any time a public official keeps a record, though not required by law, it falls within the purview of § 36-12-40. It would be helpful for the legislative department to provide the limitations by statute as some states have done. Absent legislative action, however, the judiciary must apply the rule of reason. Recorded information received by a public officer in confidence, sensitive personnel records, pending criminal investigations, and records the disclosure of which would be detrimental to the best interests of the public are some of the areas which may not be subject to public disclosure. Courts must balance the interest of the citizens in knowing what their public officers are doing in the discharge of public duties against the interest of the general public in having the business of government carried on efficiently and without undue interference."
Stone, 404 So.2d at 681 (citations omitted). InChambers v. Birmingham News Co., 552 So.2d 854
(Ala. 1989), our supreme court again recognized the applicability of the rule-of-reason test and stated:
 "To put the Stone `exception' language into perspective, along with the language of § 36-12-40, we offer the following guidance. There is a presumption in favor of public disclosure of public writings and records expressed in the language of § 36-12-40. Limitations to the broad language of the statute are, nevertheless, necessary, and, as stated in Stone, absent legislative action, the judiciary has to apply the `rule of reason.' However, it must be noted that this `rule of reason' shall not be applied so as to hamper the liberal construction of § 36-12-40. The exceptions set forth in Stone must be strictly construed and must be applied only in those cases where it is readily apparent that disclosure will result in undue harm or embarrassment to an individual, or where the public interest will clearly be adversely affected, when weighed against the public policy considerations suggesting disclosure. These questions, *Page 721 
of course, are factual in nature and are for the trial judge to resolve."
Chambers, 552 So.2d at 856.
Finally, as recently as 2004, our supreme court again approved application of the rule-of-reason test. In Water Works Sewer Board of Talladega v. Consolidated Publishing, Inc.,892 So.2d 859 (Ala. 2004), the supreme court stated:
 "We decline to abandon the Stone balancing test; `absent legislative action,' as to a particular class of records, we will continue to apply a rule of reason and `balance the interest of the citizens in knowing what their public officers are doing . . . against the interest of the general public in having the business of government carried on efficiently and without undue interference.'"
Water Works, 892 So.2d at 865-66 (quotingStone, 404 So.2d at 681).
The rule-of-reason test enunciated in Stone and its progeny adequately balances privacy interests against the need for disclosure of public documents. The rule-of-reason test allows the courts to protect from disclosure confidential information, sensitive personnel records, records pertaining to pending criminal investigations, and records, the disclosure of which would be detrimental to the best interests of the public, as well as other categories of information that may not be appropriate for public disclosure. See Stone,404 So.2d at 681. Accordingly, Alabama law already applies a balancing test similar to the one urged by Graham. For these reasons, we decline to superimpose the balancing test of the FOIA, as discussed in Favish, onto the applicable statutes.
Graham next argues that the trial court failed to use the rule-of-reason test before ordering production of the requested documents. Even if that is the case, Graham has failed to show how her or the SPD's rights have been injuriously affected.See Rule 45, Ala. R.App. P. ("No judgment may be reversed or set aside . . . unless in the opinion of the court to which the appeal is taken . . . it should appear that the error complained of has probably injuriously affected substantial rights of the parties."). It is apparent to this court that a proper application of the rule-of-reason test would have yielded the same result reached by the trial court. The trial court ordered production of the public documents subject to certain limitations and exclusions designed to protect the public interest and the privacy of those individuals affected by the disclosure. We find no error in the trial court's failure to expressly use the rule-of-reason test in crafting its order.
Finally, with regard to the ASEA's cross-appeal, we conclude that the trial court committed reversible error in failing to order production of Richard Meadows's personnel file. Section 36-26-44 subjects all SPD records to disclosure "except such records as the rules may require to be held confidential by reasons of public policy." SPD has designated certain portions of its personnel files as confidential records under Rule 670-×-17-.03, but it has not designated the complete personnel files as confidential records. Hence, those parts of the personnel files not expressly designated as confidential by the SPD are not exempt from disclosure by any rule promulgated by the SPD. Furthermore, Graham has not pointed out any public policy that would prevent disclosure of the nonconfidential portions of Meadows's personnel file.[4] Graham instead argues *Page 722 
that the ASEA has not presented a legitimate purpose for seeking access to Meadows's personnel file, a position we have already rejected.
 Conclusion
We conclude that the trial court properly issued the writ of mandamus requested by the ASEA; however, we also conclude that the trial court improperly limited the ASEA's access to the personnel file of Richard Meadows. Therefore, as to Graham's appeal, we affirm the judgment; as to the ASEA's cross-appeal, we reverse the judgment and remand the cause for further proceedings. On remand, the trial may consider any motion for a protective order, if filed, to prevent the unnecessary disclosure of sensitive personnel records or information from the personnel file of Richard Meadows.
APPEAL — AFFIRMED.
CROSS-APPEAL — REVERSED AND REMANDED.
THOMPSON, P.J., and PITTMAN, BRYAN, and THOMAS, JJ., concur.
[1] The court noted that if the ASEA insisted on inspecting those sealed documents, it should petition the court for an in camera review.
[2] The record contains no indication that the motion to alter, amend, or vacate was expressly denied; however, Graham represents in her brief to this court that the trial court denied the motion on November 20, 2006.
[3] In Stone v. Consolidated Publishing Co.,404 So.2d 678 (Ala. 1981). the Alabama Supreme Court determined that the phrase "public writing," as used in the Open Records Act, means "such a record as is reasonably necessary to record the business and activities required to be done or carried on by a public officer so that the status and condition of such business and activities can be known by our citizens."404 So.2d at 681.
[4] Graham does not argue that the request should be subjected to the rule-of-reason balancing test, so we need not decide whether that test is incorporated within Section 36-26-44.