MOORE, Judge.
Liberty Mutual Insurance Company petitions for a writ of mandamus directing the Mobile Circuit Court (“the trial court”) to vacate its November 21, 2011, order denying Liberty Mutual’s motion for a protective order and directing Liberty Mutual to produce personnel files, policy and procedure manuals relating to peer review, and information regarding other lawsuits filed against Liberty Mutual in Alabama and other specified states that alleged the tort of outrage or similar claims arising from Liberty Mutual’s handling of workers’ compensation claims. For the reasons stated below, we grant the petition in part, deny the petition in part, and issue the writ.

Procedural History

On September 9, 2010, Kenneth Wesley Brunson sued his employer, Big Ten Tires, *94 Inc., and Liberty Mutual, Big Ten Tires’ workers’ compensation insurance carrier. Brunson alleged that, on December 1, 2009, he was employed with Big Ten Tires and that, on that day, he sustained an injury to his lower back in the course and scope of his employment. Brunson asserted that, although Liberty Mutual and Big Ten Tires had authorized certain medical and compensation benefits pursuant to the Alabama Workers’ Compensation Act (“the Act”), Ala.Code 1975, § 25-5-1 et seq., they had refused to provide all the benefits to which he was entitled under the Act and had failed to pay for all reasonable and necessary medical treatment recommended by his authorized treating physician. More specifically, Brunson alleged that Big Ten Tires and Liberty Mutual had failed to approve a back surgery that had been recommended by his authorized treating physician.
In his complaint, Brunson asserted a claim for benefits under the Act. He also alleged that Big Ten Tires and Liberty Mutual were liable for the tort of outrage because their refusal to authorize the recommended surgery was “so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency and [is] atrocious and utterly intolerable in a civilized society.” Along with his complaint, Brunson served interrogatories and requests for production. Among others, Brunson’s requests for production included:
“2. Please produce true and correct copies of the personnel files, excluding HIPAA [Health Insurance Portability and Accountability Act] information, but including resumes, continuing education, licenses, certificates, complaints and reprimands of Missy Thaxton.
“3. Please produce true and correct copies of the personnel files, excluding HIPAA information, but including resumes, continuing education, licenses, certificates, complaints and resumes of Cynthia Bridges.[1]
[[Image here]]
“5. Please produce true and correct copies of any and all policy and procedure manuals that relate to or involve peer review.
[[Image here]]
“13. Please produce a copy of all lawsuits filed against this defendant for the last ten years to the present alleging tort of outrage, conspiracy to commit the tort of outrage, fraud, breach of contract, or intentional infliction of emotional distress involving any aspect of a workers’ compensation claim, settlement, or medical treatment for an injured worker.”
Although Liberty Mutual responded to those requests, on September 8, 2011, Brunson moved the trial court to compel Liberty Mutual to supplement its responses. The trial court granted that motion the following day and ordered Liberty Mutual to answer all outstanding discovery within 14 days or “suffer sanctions.”
On September 12, 2011, Liberty Mutual filed a response to the motion to compel and moved the trial court to set aside its September 9, 2011, order. Liberty Mutual requested that the trial court conduct a hearing on its opposition to the motion to compel and in support of its motion to set aside the trial court’s September 9, 2011, order.
*95 On October 3, 2011, the trial court granted Liberty Mutual’s motion to set aside the September 9, 2011, order. In that same order, however, the trial court stated that “[t]he motion to compel is granted as to all requests except that the lawsuit[s] only have to have the name, case number and where they were filed.” In correspondence, Brunson subsequently agreed to limit his request for “other litigation” documents to those actions filed within the previous 12 years and alleging the tort of outrage or similar causes of action arising out of or related to the “delayed authorization or refusal to authorize medical treatment, prescription medications, etc.,” in the states of Alabama, Florida, Mississippi, Georgia, Texas, and Tennessee; Brunson also agreed that, if Liberty Mutual did not provide workers’ compensation insurance in any of the identified states, Liberty Mutual could substitute Maine or Arizona for that state.
On November 2, 2011, Liberty Mutual moved the trial court to issue an order protecting from disclosure, among other things, the personnel files of Liberty Mutual’s employees, Liberty Mutual’s policy and procedure manuals regarding peer review, information regarding Liberty Mutual’s employee-incentive program, and any information relating to other lawsuits filed against Liberty Mutual as sought in Brun-son’s requests for production.[2]
On November 21, 2011, the trial court denied Liberty Mutual’s motion for a protective order and ordered that it produce the requested documents to Brunson. As to the personnel files and policy and procedure manuals relating to peer review, the trial court stated that “the production of the personnel files shall be pursuant to a proposed protective order to be submitted by the parties which the Court will enter limiting the dissemination of the personnel file information as specified therein. The personnel files and Liberty Mutual’s policy and procedure manuals [relating to peer review] must be produced within fourteen (14) days of the issuance of this order.”[3]
With respect to Brunson’s request for production relating to other lawsuits filed against Liberty Mutual alleging the tort of outrage or similar claims, the trial court ordered Liberty Mutual to produce the requested information for the states of Alabama, Georgia, Mississippi, Florida, Texas, and Tennessee, covering the 10-year period preceding the date of Brun-son’s work-related injury. The trial court stated;
“The Court deems this requested information discoverable as it may lead to the discovery of admissible evidence, including but not necessarily limited to, evidence going to the issue of punitive damages. Furthermore, [Brunson] claims that Liberty Mutual[,] through the medical treatment approval process[,] is at *96 tempting to improperly dictate the course of an injured worker’s medical treatment contrary to the treatment recommended by the authorized treating physician. This requested information may also lead to the discovery of Liberty Mutual’s implementation of policies or goals, whether written or unwritten relating to the directing of the course of treatment of injured Alabama workers and injured workers in other states. The requested information is reasonably calculated to lead to the discovery of documents evidencing that Liberty Mutual improperly exercised medical judgment in place of the authorized treating physician.... The lawsuits and lawsuit information must be produced within five (5) days of the issuance of this order.”
Liberty Mutual timely filed this petition seeking a writ of mandamus directing the trial court to partially vacate its order of November 21, 2011, and to enter an order protecting Liberty Mutual from the disclosure of nondiscoverable information.

Analysis

In Ex parte Ocwen Federal Bank, FSB, 872 So.2d 810, 818-14 (Ala.2003), our supreme court addressed the standard applicable to our review of this petition:
“Mandamus is an extraordinary remedy and will be granted only where there is ‘(1) a clear legal right in the petitioner to the order sought; (2) an imperative duty upon the respondent to perform, accompanied by a refusal to do so; (3) the lack of another adequate remedy; and (4) properly invoked jurisdiction of the court.’ Ex parte Alfab, Inc., 586 So.2d 889, 891 (Ala.1991). This Court will not issue the writ of mandamus where the petitioner has ‘ “full and adequate relief’ ’ by appeal. State v. Cobb, 288 Ala. 675, 678, 264 So.2d 523, 526 (1972) (quoting State v. Williams, 69 Ala. 311, 316 (1881)).
“Discovery matters are within the trial court’s sound discretion, and this Court will not reverse a trial court’s ruling on a discovery issue unless the trial court has clearly exceeded its discretion. Home Ins. Co. v. Rice, 585 So.2d 859, 862 (Ala.1991). Accordingly, mandamus will issue to reverse a trial court’s ruling on a discovery issue only (1) where there is a showing that the trial court clearly exceeded its discretion, and (2) where the aggrieved party does not have an adequate remedy by ordinary appeal. The petitioner has an affirmative burden to prove the existence of each of these conditions.
“Generally, an appeal of a discovery order is an adequate remedy, notwithstanding the fact that that procedure may delay an appellate court’s review of a petitioner’s grievance or impose on the petitioner additional expense; our judicial system cannot afford immediate mandamus review of every discovery order. See Walker v. Packer, 827 S.W.2d 833, 842 (Tex.1992) (‘Mandamus disrupts the trial proceedings, forcing the parties to address in an appellate court issues that otherwise might have been resolved as discovery progressed and the evidence was developed at trial.’). In certain exceptional cases, however, review by appeal of a discovery order may be inadequate, for example, (a) when a privilege is disregarded, see Ex parte Miltope Corp., 823 So.2d 640, 644-45 (Ala.2001) (Tf a trial court orders the discovery of trade secrets and such are disclosed, the party resisting discovery will have no adequate remedy on appeal.’); (b) when a discovery order compels the production of patently irrelevant or du-plicative documents, such as to clearly constitute harassment or impose a burden on the producing party far out of *97 proportion to any benefit that may obtain to the requesting party, see, e.g., Ex parte Compass, 686 So.2d 1185, 1138 (Ala.1996) (request for ‘every customer file for every variable annuity’ including annuity products the plaintiff did not purchase); (c) when the trial court either imposes sanctions effectively precluding a decision on the merits or denies discovery going to a party’s entire action or defense so that, in either event, the outcome has been all but determined, and the petitioner would be merely going through the motions of a trial to obtain an appeal; or (d) when the trial court impermissibly prevents the petitioner from making a record on the discovery issue so that the appellate court cannot review the effect of the trial court’s alleged error. The burden rests on the petitioner to demonstrate that its petition presents such an exceptional case — that is, one in which an appeal is not an adequate remedy. See Ex parte Consolidated Publ’g Co., 601 So.2d 423, 426 (Ala.1992).”
(Footnote omitted.) We address each category of documents sought by Brunson to determine if the trial court exceeded its discretion in ordering their production.
I. Other Litigation
In Ex parte Vulcan Materials Co., 992 So.2d 1252 (Ala.2008), our supreme court addressed a discovery dispute on a petition for a writ of mandamus and recognized that “ ‘ “[t]he first step in determining whether the court has [exceeded] its discretion is to determine the particularized need for discovery, in light of the nature of the claim.” ’ ” Id. at 1263 (quoting Ex parte Henry, 770 So.2d 76, 80 (Ala.2000), quoting in turn Ex parte Rowland, 669 So.2d 125, 127 (Ala.1995)) (emphasis added in Ex parte Vulcan Materials Co.). In his complaint, Brunson asserts that Liberty Mutual, the workers’ compensation insurance carrier adjusting his claim for benefits, denied authorization and payment for a back surgery that had been recommended by his authorized treating physician without “good and valid reasons.” Brunson asserts in his response to the mandamus petition that that denial was “part of a systematic effort by Liberty Mutual to institute policies to dictate to doctors the treatment that should be received by patients.” Brunson’s answer, p. 9; see also City of Auburn v. Brown, 638 So.2d 1339 (Ala.Civ.App.1993) (holding that an employer cannot dictate to an authorized treating physician the course of medical treatment for an injured worker). Brunson claims that Liberty Mutual, by developing a scheme to deny medical treatment, has committed the tort of outrage, as recognized in Alabama.
To prevail on a tort-of-outrage claim, Brunson must prove that Liberty Mutual’s conduct “ ‘ “(1) was intentional or reckless; (2) was extreme and outrageous; and (3) caused emotional distress so severe that no reasonable person could be expected to endure it.” ’ ” Soti v. Lowe’s Home Ctrs., Inc., 906 So.2d 916, 919 (Ala.2005) (quoting Harrelson v. R.J., 882 So.2d 317, 322 (Ala.2003), quoting in turn Thomas v. BSE Indus. Contractors, Inc., 624 So.2d 1041, 1043 (Ala.1993)). Our supreme court has held that if a workers’ compensation insurance carrier unlawfully denies authorized and reasonably necessary medical treatment, such as for the purpose of extorting an inadequate settlement from an injured worker, see Continental Cas. Ins. Co. v. McDonald, 567 So.2d 1208 (Ala.1990), so as to recklessly or intentionally cause extreme emotional distress to the injured worker, see Travelers Indem. Co. of Illinois v. Griner, 809 So.2d 808 (Ala.2001), a tort-of-outrage claim will lie. On the other hand, tort-of-outrage claims against workers’ compensation insurance *98 carriers have failed when the evidence showed that the carrier, in denying treatment, .was merely “ ‘[insisting] upon [its] legal rights in a permissible way.’ ” Garvin v. Shewbart, 564 So.2d 428, 431 (Ala.1990) (quoting American Road Serv. Co. v. Inmon, 394 So.2d 361, 368 (Ala.1981)).
Thus, in order to prove his allegations and meet the elements of a tort-of-outrage claim, Brunson must first show that Liberty Mutual denied his claim for reasons, or in a manner, that did not comply with the law. In his complaint, Brun-son alleges his claim is governed by the Act. Alabama has instituted a fairly complex statutory procedure governing the denial of authorized medical treatment on the ground that it is not reasonably medically necessary. See Ex parte Southeast Alabama Med. Ctr., 835 So.2d 1042 (Ala.Civ.App.2002). Under Alabama’s utilization-review procedures, a medical-treatment plan is subjected to a four-step review, 2 T. Moore, Alabama Workers’ Compensation § 17:27 (1998), the last of which requires an active, board-certified medical practitioner (“the peer reviewer”) to examine the treatment plan developed by an injured worker’s authorized treating physician to determine whether such treatment is reasonably medically necessary based on criteria generally accepted within the medical community. See Ala. Admin. Code (Dep’t of Indus. Relations), Rules 480-5-5-06(4) and 480-5-5~.09(3). Pursuant to administrative regulations, the peer reviewer is to determine whether the treatment plan is consistent with the diagnosis of the condition or complaint and with the standard of good care of medical practice. Ala. Admin. Code (Dep’t of Indus. Relations), Rule 480-5-5-.ll(3)(a) & (b). If it is not, the workers’ compensation insurance carrier can deny authorization or payment for the medical treatment on the ground of lack of reasonable medical necessity. See Ala. Admin. Code (Dep’t of Indus. Relations), Rule 480-5-5-.11(3)(c), and Ex parte Southeast Alabama Med. Ctr., 835 So.2d at 1050.
Under Alabama law, a workers’ compensation insurance carrier denies medical treatment for a work-related injury recommended by an authorized treating physician without “good and valid reasons” either when it fails to submit the treatment plan to utilization review or when the treatment plan is rejected as medically unnecessary for reasons other than those established in the foregoing administrative regulations. See Ex parte Southeast Alabama Med. Ctr., supra. In this case, Brunson is not alleging that Liberty Mutual failed to submit his treatment plan to utilization review but, rather, that Liberty Mutual essentially substituted its own criteria for determining medical necessity that did not conform with Alabama law and that Liberty Mutual selected peer reviewers who would rely on that criteria, all as part of a concerted effort to unlawfully deny claims for medical benefits, including Brunson’s. Thus, Brunson’s tort-of-outrage claim falls uniquely within the confines of the law of this state so that lawsuits alleging a tortious denial of medical benefits in contravention of the law of other states would not be relevant, at least absent a preliminary showing that the law of other states is substantially identical to the law of Alabama.
Our research reveals that utilization review for medical necessity is used in the other states listed in the trial court’s order, but the criteria for determining medical necessity is defined differently in those states so that the standard in those states may be considered either broader or more strict than the medical-necessity standard used in Alabama. See Fla. Stat. § 440.13(2)(e) & (5) (allowing review of medical treatment plan to determine *99 whether it is “reasonably prudent” and allowing for independent medical examination in case of dispute); Ga.Code Ann. § 34-9-208, and Ga.Code Ann. Rule 208 (governing Georgia’s utilization-review procedures); Miss.Code Ann. § 71-3-15(3) (authorizing workers’ compensation commission to establish utilization-review panels to determine “medical necessity” without further definition); Tenn.Code Ann. § 50-6-124 and Tenn. Comp. R. & Regs., Rule 0800-02-06-.03 (detailing utilization-review procedures for determining “medical necessity” without further definition); and Texas Lab.Code Ann. §§ 413.011(e), 413.014(c), and 413.031 (requiring preau-thorization and concurrent review for all spinal surgeries and allowing for review of treatment plans to determine if treatment guidelines and protocols are “evidence-based, scientifically valid, and outcome-focused”). Hence, we do not agree with Brunson that discovery of lawsuits alleging a tortious denial of medical benefits under the workers’ compensation laws of those states would be reasonably calculated to produce admissible evidence to support his tort-of-outrage claim based on Alabama law.
Brunson asserts that the documents regarding “other litigation” are relevant to the issue of punitive damages, which are recoverable in tort-of-outrage actions. See Griner, supra. In Ex parte Vulcan Materials Co., supra, our supreme court held that a plaintiff cannot, for the purposes of supporting a punitive-damages award, discover out-of-state lawsuits filed against the defendant alleging only similar causes of action. The court held that, among other things, discovery must be limited to extraterritorial conduct with “ ‘a nexus to the specific harm suffered, by the plaintiff,’ ” 992 So.2d at 1263 (quoting State Farm Mut. Auto. Ins. Co. v. Campbell, 538 U.S. 408, 422, 123 S.Ct. 1513, 155 L.Ed.2d 585 (2003)), and, hence, that “a litigant may not seek to support a punitive-damages award through discovery aimed at generic, undel-ineated out-of-state conduct.” Id. That is so, the court reasoned, because “[a]n action in one state may not be ‘used as a platform to expose, and punish, the perceived deficiencies of [a defendant’s] operations throughout the country,’ ” id. (quoting Campbell, 538 U.S. at 420, and because “ ‘as a general rule,’ a State does not ‘have a legitimate concern in imposing punitive damages to punish defendants for unlawful acts committed outside of the State’s jurisdiction.’ ” Id. (quoting Campbell, 538 U.S. at 421).
In this case, after initially requesting discovery of other litigation “involving any aspect of a workers’ compensation claim, settlement, or medical treatment for an injured worker,” Brunson voluntarily narrowed his request to discovery of lawsuits involving “delayed authorization or refusal to authorize medical treatment.” However, even Brunson’s narrowed request for documents regarding litigation filed outside Alabama and alleging the tort of outrage or similar claims in relation to any delay or any denial of medical authorization, regardless of the grounds therefor, does not have a nexus to the specific harm alleged by Brunson in the present case. Neither Brunson nor the trial court limited the discovery to lawsuits alleging tortious denial of medical benefits based on the same conduct that Brunson alleges Liberty Mutual committed to harm him, i.e., the substitution of its own standards for determining medical necessity in violation of the standards required by Alabama law. As explained thoroughly above, discovery of lawsuits filed in other states would not be reasonably calculated to produce admissible evidence to prove Brunson’s specific claim. Hence, we reject any argument that the discovery of extraterritorial law *100 suits should be allowed for the purposes of supporting a punitive-damages award.
The trial court did not, however, exceed its discretion in ordering Liberty-Mutual to produce to Brunson information relating to other litigation filed against it within the State of Alabama. See Ex parte Vulcan Materials Co., 992 So.2d at 1263. The holdings in McDonald and Griner reflect our state’s policy that injured workers should receive authorized and reasonably necessary medical treatment for work-related injuries, see § 25-5-77, Ala. Code 1975, and our state’s belief that denials of such treatment for impermissible reasons with knowledge that the injured worker will suffer resulting pain or increased disability should not be tolerated in this civilized society. Griner, supra. Hence, discovery of other similar lawsuits in Alabama could lead to admissible evidence that would support Brunson’s tort-of-outrage claim and an award of punitive damages.
We hold that the scope of the discovery order should have been limited to lawsuits filed in this state that allege that Liberty Mutual tortiously denied medical benefits otherwise payable under the Act to injured workers by unlawfully directing the course of their medical treatment. The discovery order should include only lawsuits alleging substantially similar claims that Liberty Mutual engaged in some sort of scheme or course of conduct to deny medical treatment for work-related injuries recommended by an authorized treating physician on the ground of lack of reasonable medical necessity using criteria other than that set out in Alabama’s utilization-review statutes and administrative regulations.
We further agree with Liberty Mutual that the discovery order should be properly limited temporally, see Ex parte Vulcan Materials Co., 992 So.2d at 1263; however, we do not agree that the trial court exceeded its discretion in that regard. Alabama’s utilization-review statutes were enacted in 1992 and the administrative regulations adopted by the Department of Industrial Relations interpreting those statutes became effective on September 13, 1996. Ex parte Southeast Alabama Med. Ctr., 835 So.2d at 1067. Brunson does not state when he contends Liberty Mutual commenced its alleged scheme, but it is apparent that it could not have begun, if at all, until after 1996; hence, any substantially similar claims could have been filed only after that date. In its order, the trial court required Liberty Mutual to produce similar lawsuits dating back to 10 years before Brunson’s work-related injury, or to December 1, 1999. Although the supreme court indicated that five years would be a reasonable temporal limit to be placed on discovery requests in some cases, see Ex parte Vulcan Materials Co., 992 So.2d at 1263 (citing multiple cases), considering the relatively short period in which Alabama’s utilization-review standards have been effective, the fairly novel claim asserted by Brunson, and the absence of any evidence from Liberty Mutual indicating that it cannot readily identify any lawsuits alleging its tortious violation of those standards dating back more than five years, we conclude that the temporal limitation imposed by the trial court in this case is reasonable.
In summary, we conclude that trial court should revise its order to deny Brunson discovery of lawsuits filed against Liberty Mutual in other states and to require Liberty Mutual to produce only those lawsuits asserting substantially similar claims, as defined above, filed in Alabama since December 1,1999.
*101 II. Personnel Files
In his requests for production, Brunson sought the personnel files of those Liberty Mutual employees who had involvement in the handling of his claim; more specifically, he sought the production of the resumes, continuing-education records, licenses, and certificates those employees; he also sought the production of documents regarding complaints against those employees and reprimands of those employees. Liberty Mutual objected, asserting that the requests were overly broad and overly burdensome and that the requested documents were irrelevant, immaterial, and not likely to lead to the discovery of admissible evidence. Liberty Mutual also objected on the basis that the documents sought by Brunson were confidential and contained personal information and that the production of such information as to a nonparty would constitute an invasion of that party’s privacy. The trial court ordered Liberty Mutual to produce the personnel files “pursuant to a proposed protective order to be submitted by the parties which the Court will enter limiting the dissemination of the personnel file information as specified therein.”
We agree with Liberty Mutual that information contained in personnel files is generally deemed to be private and protected from disclosure. For example, in Graham v. Alabama State Employees Ass’n, 991 So.2d 710 (Ala.Civ.App.2007), this court addressed a request for production of a state employee’s personnel file; that request was made pursuant to the Alabama Open Records Act, Ala.Code 1975, § 86-12^0 et seq. Id. at 718. This court concluded that, because the records at issue were subject to the Open Records Act and the requesting party had stated a legitimate purpose for seeking those records, the nonconfidential portions of the employee’s file were required to be produced. Id. at 721-22.
We note, however, that in Graham this court recognized that a “rule-of-reason” test must be applied when considering whether to compel disclosure of sensitive documents even when those documents are maintained as “public records” and their disclosure is mandated under the Open Records Act. Id. at 720-21. Additionally, our supreme court has recognized that personnel records fall within that category of sensitive documents subject to analysis under the rule-of-reason test. In Stone v. Consolidated Publishing Co., 404 So.2d 678, 681 (Ala.1981), our supreme court stated:
“Absent legislative action, however, the judiciary must apply the rule of reason. Recorded information received by a public officer in confidence, sensitive personnel records, pending criminal investigations, and records the disclosure of which would be detrimental to the best interests of the public are some of the areas which may not be subject to public disclosure. Courts must balance the interest of the citizens in knowing what their public officers are doing in the discharge of public duties against the interest of the general public in having the business of government carried on efficiently and without undue interference.”
(Citations omitted.)
Because the result of Graham was compelled by the Open Records Act and the administrative rules of the State Personnel Board, Graham is not controlling in the instant case; neither that act nor those rules apply in this case. Additionally, the reasoning applied in Stone and Graham does not apply to the private sector because, as to a privately employed person, there can be no “interest of the general public in having the business ... carried *102 on efficiently and without undue interference.” Stone, 404 So.2d at 681.
A search of Alabama caselaw reveals State v. Turner, 976 So.2d 508, 515 (Ala.Crim.App.2007), in which the Alabama Court of Criminal Appeals recognized that “Alabama has never had occasion to specifically address whether the personnel files of a police officer are discoverable during a post-conviction proceeding. However, other jurisdictions have limited the right to obtain this information during discovery in a criminal case.” (Footnote omitted.) In addressing the issue, the Court of Criminal Appeals identified numerous other jurisdictions that routinely deny requests for the production of personnel files of police officers without a specific and detailed factual showing that the file is reasonably likely to contain material and relevant evidence. Id. at 515-16 (citing cases). In nearly all the cases cited in Turner, the requesting party had relied on the same principles cited by Brunson in support of his request, i.e., the broad discovery rights of a party and the party’s belief that such discovery might lead to relevant and admissible evidence; those general principles were consistently found to be an insufficient basis on which to compel the requested discovery. Id.
Although we have located no other applicable Alabama case, we conclude that privately employed persons are entitled to at least the same level and expectation of privacy as that afforded to publicly employed persons under the rule-of-reason test addressed in Graham, supra, and Stone, supra. We find the following language, applied by the United States District Court of Maine in determining whether personnel files were discoverable in a civil proceeding, sufficiently similar to the showing required under the rule-of-reason test once that rule is adapted to privately employed persons:
“There exists a strong public policy against disclosure of personnel files. Discovery of such files is permissible ‘if (1) the material sought is “clearly relevant,” and (2) the need for discovery is compelling because the information sought is not otherwise readily obtainable.’ In re Sunrise Securities Litigation, 130 F.R.D. 560, 580 (E.D.Pa.1989) (quoting Matter of Hawaii Corp., 88 F.R.D. 518[,] 524 (D.C. [Haw.]’ 1980)). General allegations ... do not suffice to render these records discoverable. Plaintiffs must first make an initial fact-specific showing.... See In re Sunrise Securities Litigation, 130 F.R.D. at 580.”
In re One Bancorp Sec. Litig., 134 F.R.D. 4, 12 (D.Me.1991). We therefore conclude that the rule-of-reason test, once it is adapted for privately employed persons, must be applied to determine whether the personnel files sought by Brunson are discoverable.
Thus, to be entitled to the requested personnel files, Brunson must first establish that the material sought is clearly relevant and that his need for the requested discovery is compelling because the information sought is not otherwise readily obtainable. Brunson asserts that he seeks the personnel files
“of those individuals who orchestrated the denial of [Brunson’s] care. The records pertain to these individuals’ capacity, skill, ability, and performance in their positions as adjusters, claims, handlers, and/or claims representatives. [Brunson] seeks this discovery for evidence that these employees were rewarded or admonished for complying or failing to comply with the policies or procedures implemented by Liberty Mutual with respect to workers’ compensation claims. These documents are relevant to show ... Liberty Mutual’s *103 policies with respect to the treatment of workers’ compensation claimants, a matter that is directly at issue in this case.”
Brunson, however, has neither named any Liberty Mutual employee as a defendant in this action nor alleged that Liberty Mutual negligently hired, retained, or supervised any of those employees who handled Brunson’s claim. Thus, we fail to see any relevance between Brunson’s claim of the tort of outrage and the employees’ resumes, credentials, general training and education, etc., and conclude that the trial court exceeded its discretion in ordering the production of the entire contents of those personnel files. See, e.g., Henricksen v. State, 319 Mont. 307, 84 P.3d 38 (2004) (concluding that the state was not entitled to discover mother’s personnel records in her negligence action because those records had no relevancy to the mother’s claim).
Any information contained in the employees’ personnel files that specifically relates to their handling of Brunson’s workers’ compensation claim, any information regarding any training they received to assess medical necessity or to deny Alabama workers’ compensation medical claims on grounds other than those set out in this state’s applicable laws and regulations, and any information that they received incentives, rewards, or the like for furthering the alleged unlawful scheme to deny Alabama workers’ compensation medical benefits to injured workers in this state would be relevant to prove Liberty Mutual’s alleged outrageous conduct and would be discoverable because that information would not be available to Brunson from other sources. See, e.g., Sloan v. Jasper Cnty. Cmty. Unit Sch. Dist. No. 1, 167 Ill.App.3d 867, 522 N.E.2d 334, 118 Ill.Dec. 879 (1988) (allowing discovery of personnel records, subject to protective order, by former employee in his retaliatory-discharge action against former employer that terminated employee’s employment following his filing of a workers’ compensation claim; appellate court determined that the personnel records were relevant to the retaliatory-discharge claim and that privacy of the nonparties could be adequately protected by an appropriate protective order); and Miles v. Boeing Co., 154 F.R.D. 112, 115 (E.D.Pa.1994) (although recognizing that allowing discovery of a nonparty’s personnel file would result in an invasion of privacy, documents in the file were relevant to the issue of pretext, an essential element of plaintiffs race-discrimination action, and the nonparty’s privacy concerns could be adequately addressed with a protective order). But cf. Svoboda v. Clear Channel Commc’ns, Inc., (No. L-02-1149, Nov. 14, 2003) (Ohio Ct.App.2003) (not reported in N.E.2d) (concluding, without discussion of privacy issues, that the trial court did not err in granting plaintiffs motion to compel discovery as to salaries of certain employees on plaintiffs claims of slander, invasion of privacy, and intentional infliction of emotional distress).
We conclude that the trial court should revise its order to limit the discovery to those portions of the subject employees’ personnel files outlined above. To assure the broadest discovery to Brunson, however, we conclude that the entirety of the personnel files should be produced to the trial court for an in camera review so that it can determine for itself those documents that should be removed, or portions of which should be redacted, to prevent disclosure of irrelevant, sensitive, confidential, or private information and to determine which documents should be disclosed as falling within the parameters of this court’s opinion. As the trial court has already decided, the documents, once produced, should be “subject to protective *104 order to be submitted by the parties which the [trial court] will enter limiting the dissemination of the personnel file information as specified therein.”
III. Policy and Procedure Manuals as to Peer Review
The trial court ordered Liberty Mutual to produce all policy and procedure manuals that relate to or involve peer review. In its mandamus petition, Liberty Mutual asserts that its peer-review manuals “contain confidential, proprietary and privileged business information, the disclosure of which would constitute harassment and would impose a burden on Liberty Mutual far out of proportion to any benefit received by Brunson.”
Liberty Mutual fails to cite any authority establishing that the peer-review manuals sought by Brunson are confidential, proprietary, and privileged. In support of its argument, Liberty Mutual has provided only an analysis of cases addressing the tort of outrage arising in the context of a workers’ compensation claim; those cases do not address peer-review manuals or other types of confidential, proprietary, or privileged materials.
We also note that Liberty Mutual fails to explain why its policy and procedure manuals relating to peer review could not be relevant to Brunson’s tort-of-outrage claim other than to assert that the “[h]an-dling of claims based on suggestions in a manual or other documentation and pattern and practice evidence has absolutely no relevance or materiality in proving a claim of outrageous conduct.” The correctness of that argument is not self-evident to this court so that no supporting authority is required. To the contrary, we can easily see that the manuals could contain information highly relevant to Brunson’s claim. For example, part of the utilization-review procedures require that workers’ compensation insurance carriers use peer reviewers who are “familiar with the principles and procedures of utilization review, peer review and these rules,” Ala. Admin. Code (Dep’t of Indus. Relations), Rule 480-5-5-.06(4)(l)4., including, of course, the standards by which medical-necessity determinations shall be made. The policy and procedure manuals could contain information indicating that Liberty Mutual retained unqualified peer reviewers or apprised its peer reviewers of standards by which to conduct utilization review and make medical-necessity determinations that do not conform to Alabama law. Although we do not mean to imply that the manuals actually do contain such information, we find that, if they did, such evidence could support Brun-son’s claim that Liberty Mutual had developed and executed a plan to unlawfully deny authorized medical treatment for work-related injuries, an integral element of his tort-of-outrage action.
It is well settled that “[t]his court will address only those issues properly presented and for which supporting authority has been cited.” Asam v. Devereaux, 686 So.2d 1222, 1224 (Ala.Civ.App.1996). “Rule 28(a)(10)[, Ala. R.App. P.,] requires that arguments in briefs contain discussions of facts and relevant legal authorities that support the party’s position. If they do not, the arguments are waived.” White Sands Group, L.L.C. v. PRS II, LLC, 998 So.2d 1042, 1058 (Ala.2008); see also Bishop v. Robinson, 516 So.2d 723, 724 (Ala.Civ.App.1987) (noting that an appellant should “present his issues “with clarity and without ambiguity’ ” and “fully express his position on the enumerated issues” in the argument section of his brief (quoting Tho-man Engineers, Inc. v. McDonald, 57 Ala.App. 287, 290, 328 So.2d 293, 294 (Ala.Civ.App.1976))). Accord United States v. Zannino, 895 F.2d 1, 17 (1st Cir.1990) (“It is *105 not enough merely to mention a possible argument in the most skeletal way, leaving the court to do counsel’s work ... and put flesh on its bones.”).
The trial court, in its broad discretion, found the manuals relating to or involving peer review to be relevant and ordered Liberty Mutual to produce those manuals to Brunson. Liberty Mutual has not established that it has a clear legal right to a reversal of that ruling. As a result, we cannot conclude that the trial court exceeded its discretion as to that issue.
Based on the foregoing, we grant the petition for a writ of mandamus in part and deny the petition in part. We direct the trial court to revise its current discovery order and to conduct such other proceedings as are necessary to assure conformance with this opinion.
PETITION GRANTED IN PART AND DENIED IN PART; WRIT ISSUED.
THOMPSON, P.J., and PITTMAN and THOMAS, JJ., concur.
BRYAN, J., concurs in the result, without writing.

. Brunson subsequently served a second set of requests for production of documents and requested complete copies of the personnel files of additional persons. It is unclear if all of those named persons are Liberty Mutual employees. Our analysis of Brunson's requests for copies of personnel records applies equally to all requested personnel files.

. By seeking a protective order, Liberty Mutual complied with Rule 26(c), Ala. R. Civ. P., and with the directives from our supreme court that "the party seeking a writ of mandamus in a discovery dispute must properly move for a protective order under Rule 26(c).” Ex parte CIT Commc'n Fin. Corp., 897 So.2d 296, 298 (Ala.2004). Liberty Mutual also sought a stay of the proceedings pending final disposition of the discovery dispute. The trial court granted, in part, that request; proceedings on Brunson’s tort-of-outrage claim were stayed while proceedings on his workers' compensation claim were allowed to continue.

. In its motion for a protective order, Liberty Mutual also sought to protect from disclosure its policy and procedure manuals regarding the adjustment of workers’ compensation claims. To the extent the trial court’s November 21, 2011, order required Liberty Mutual to produce manuals relating to Liberty Mutual’s handling of workers’ compensation claims, Liberty Mutual does not contest that aspect of the trial court's order.